## Martz *against* Hartley.

After a survey has been made for more than twenty-one years and possession held in pursuance of it, and one of its lines was agreed on by the owner of the land and the owner of an adjoining tract to be at a certain place; such designation of the division is conclusive, without regard to the point where the surveyed line actually is.

When a survey has been made on a warrant, and returned, calling for an adjoining survey as one of its boundaries, the title of the warrantee will extend to such adjoining survey, although the line actually run and marked on the ground may be a few perches from the line of such adjoining survey.

ERROR to *Columbia* county.

This was an action of trespass *quare clausum fregit*, by Jacob Martz against Christian Hartley, which involved the title to a small strip of land; and the following facts appeared. A warrant issued in the name of Timothy Matlock, and another in the name of John Schneider, the former of which was executed on the 18th of September 1772, and the latter on the 10th of October 1772 and which called for the former as a boundary on the south. By the owners of each of these respective tracts of land, the south line of the Schnei-

[Martz v. Hartley.]

der survey was always acknowledged to be their partition line. In 1833 Christian Hartley discovered that the line of the Matlock survey, as actually run and marked upon the ground, did not adjoin or come up to the line of the Schneider survey, but was distant from it, at one end, about nine perches, and running to a point at the other end, or nearly so; and he took out a warrant for five acres, the land which was not actually included within the lines of either survey as run and marked on the ground. The alleged trespass was committed on this strip of land, and the question was, whether the plaintiff had any title ? The exception was to the opinion of the court below, the material part of which was as follows:

"The court instructed the jury that the marks upon the ground made by the surveyors, or the monuments called for by him at the time of executing the warrant, were the true lines of the survey, and would control the courses and distances in the official draft.

"That where no such marks or monuments are found upon the ground, and when there is no evidence of any such having been established at the time of executing and returning the survey, the courses and distances in the official draft must be taken in fixing the lines.

"That the true location of the plaintiff's survey must be determined by what was done at the time it was made and returned ; and if made according to the draft returned, it cannot be changed by the deputy surveyor or others concerned in the location of the younger survey, made twenty-two days afterwards, and to which the owner of the first survey was no party. If such younger survey were in fact laid six or nine perches from the first, and the marks upon the ground are still found to show it to have been so laid, a *mistaken* call for the older survey as adjoining, when in fact it did not adjoin, will not extend the bounds of the older survey, nor authorise its owner to include within its bounds the vacant lands of the commonwealth not before included or returned. The recognition of the Schneider survey line by the owner of that survey as being also the line of Matlock, at a time when he had no interest in disputing it or claiming beyond his own survey, and when he neither knew that there was any vacant land there nor thought of taking out a warrant for it, would not authorise the owner of the Matlock survey to extend its bounds and include within its lines the vacant land between the two surveys.

"The statute of limitations does not run against the commonwealth ; there is no person on the ground to look after her rights, and she is not precluded from disposing of the land, as vacant, by the length of time during which the owners of the two surveys have recognized the line of the Schneider survey as the division line between the two tracts. If the jury believe that there is vacant land between the two surveys, the commonwealth may dispose of it. It is for the jury to determine whether there are marks upon the ground showing that the line of plaintiff's survey was actually run

[Martz v. Hartley.]

in a place somewhat different from that returned : if so, those marks should be followed ; and if the timber was cut within the lines so ascertained, the verdict should be for the plaintiff.   If no such evidences are found, and the jury are satisfied that the line was left open, the plaintiff must be confined to the courses and distances in his official draft and in his patent.   If this should be found to be the true line, and the timber was not cut within it, the verdict should be for the defendant."

    *Cooper* and *Greenough*, for plaintiff in error.
    *Frick* and *Bellas*, for defendant in error.

    The opinion of the Court was delivered by
    Huston, J.—I cannot concur with the opinion of the court as applied to the facts of this case, or as being true as the general law of this state.   There is no survey of ordinary size, the lines of which will measure exactly to the corners, or to the place where they once stood :  hence, every surveyor in tracing old surveys expects to find, and does find the length of every line differing more or less from his draft.   In many parts of this state there is not one originally marked tree in each ten miles square.   Is each tract to be re-measured carefully and all overplus to become vacant land ?   The doctrine of confining a man to the precise distance in his draft will not do :  it will not do justice ; it will not, in any case, give a man the land in his draft ; and it would unsettle the extent of every old settled tract of land in the state.   After the lapse of many years, line trees are not found ; and nobody, who knows any thing about it, expects to find them.   Trees die as well as men—are liable to wind and fire—and, like men, are sometimes maliciously destroyed.   The line as used, as established by consent, as designated by fences, seen and acknowledged by both parties—the admission of a fact, as that a corner stood at a particular spot, and proof that both parties have admitted it for twenty-one years, is conclusive ; so much so, that positive proof, the truth of which all admit, will not move a fence between·two fields, which their owners have admitted for twenty-one years to be the line between them.   In the case in 9 *Johns. Rep.* each party claimed a straight line between two points, but the fence dividing the possession was crooked and stood so for twenty years :  he who moved it and set it straight was decided to be a trespasser.   The judge ought to have told the jury, that when the survey had been made for more than twenty-one years, and possession taken, and the division line had been agreed upon by the respective owners on each side, it was conclusive, as much so as if the line trees were all standing and the men who ran and marked them had been in court to prove it.   It had been supposed that titles to land had been nearly settled, and on principles satisfactory to all reasonable men :  but the doctrine that where lines are not still standing, a man must be confined to his strict measure, would set all afloat ; and the oldest would be the

[Martz v. Hartley.]

worst title, and continue to grow worse as a tree died, was blown down by the wind or dug up in the night.

There is no such thing as finding a gore of four, five or ten acres between two surveys which call for each other. When the latter calls for the former, and the course is the same, the line of the former is seldom retraced in making the latter. A survey which calls for a river or a creek, has that for its boundary, though the courses on the draft will not exactly follow it. One of the instructions to every deputy surveyor under the proprietary act was, that when two surveys were near to each other, he should lay them so as they should adjoin. The reason is obvious : long narrow strips bounded by old surveys, would not be readily sold ; and the consequence was, that when a surveyor had made and returned one survey, and made another near to it, he made it join the former by protraction ; that is, in his return he threw away a line he had run, and bounded his second survey on the one made before. The owner of the last survey can then hold the land on his side up to the line of the old survey ; but he has no right to go into it, still less after acknowledging it by clearing up to it, and calling it his line for more than twenty-one years, has he a right, under pretence of doing justice to the commonwealth, to re-survey it, and by strict measurement and calculation as to variations of the compass, to make a part of it vacant and take it up as such. A little reflection will satisfy the acute mind of the judge who decided this cause, that rules applicable to finding lines of surveys which were perfectly correct a few years after the survey was made, are totally misplaced after the lapse of half a century. The time is coming, and in some parts of the state has come, where no original lines are to be found. How are we to ascertain our boundaries in such case ? Why, just as they are ascertained in incalculably the greatest part of the world. What a man has possessed long enough to be protected by the statute of limitations he has a right to : the place in which he and his neighbour have said for twenty-one years his line is, must continue to be the place where *it is*. There is no other doctrine on which titles can be safe ; and nothing more destructive of title could be invented, than substituting theory about variation of the compass, instead of lines once seen and since acknowledged, till the trees and those who marked them are no more. Akin to this, and no better, is the investigation whether a long line is perfectly straight, and paring and trimming a survey made in the wilderness in cold or wet, or under circumstances which occasioned hurry, by one through cleared land, made at leisure. When the survey was made the title was agreeable to it, whether it was or was not accurate in all respects ; and the owner had a right to his marked lines, and by his lines, though not straight, and though it was a little longer or shorter than designated on the draft. When marks are all gone, a fence made and acknowledged by both parties for twenty-one years to be the line, is conclusive, and must be so, or no man is safe.

Judgment reversed and a *venire de novo* awarded.