## Nulton *v.* Nulton, Appellant.

*Real property—Ejectment—Parol gift — Adverse possession — Evidence—Case for jury—Recording claim of title—Act of May 31, 1901, P. L. 352—Laches—Estoppel.*

1. A gift of land by parol, accompanied by an actual entry and possession, manifests the intention of the donee to enter and take as owner and not as tenant, and it equally proves an admission on the part of the donor that the possession is so taken.

2. Title by adverse possession is sufficiently proved to carry the case to the jury in an action of ejectment where there is evidence

that plaintiffs' father, under whom plaintiffs claim, entered upon the land under a parol gift from the record owner and for thirty-four years thereafter had open, notorious and exclusive possession thereof; that he made improvements on the land, resided thereon and paid taxes and insurance and that the donor recognized his title in describing the land in conveyances of other adjoining land and by verbal declarations against her own interest.

3. The failure of one claiming title to land by adverse possession but not in possession thereof, to file and record a statement of his claim as required by the Act of May 31, 1901, P. L. 352, will not estop him or those claiming under him from maintaining an action of ejectment against a purchaser from the record owner or his heirs where it appears that such purchaser had actual or constructive notice of plaintiffs' title. The act protects only a purchaser for value without notice.

4. The failure of parties claiming title to land to bring an action of ejectment for nine years after the cause of action arose will not constitute such laches as to bar the action where it appears that one of plaintiffs, a minor, was prevented for more than seven years from bringing the action by the party under whom defendants claim and that the other plaintiff was absent from the jurisdiction and was not aware of his rights.

Argued Oct. 1, 1914. Appeal, No. 60, Oct. T., 1914, by defendants, from judgment of C. P. Armstrong Co., Dec. T., 1912, No. 94, on verdict for plaintiffs in case of Harry Nulton and George Nulton v. Edward M. Nulton and William N. Nulton. Before MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Ejectment to recover lands in Armstrong County. Before PAINTER, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiffs for the land in suit and judgment thereon. Defendants appealed.

*Errors assigned* were in refusing to direct a verdict for defendant and to enter judgment for defendant n. o. v., answers to points and instructions to the jury.

*Harry C. Golden,* with him *R. L. Ralston,* for appel-

lants.—The evidence failed to establish that McConnell Nulton entered upon the land under a parol gift from his mother: Huffman v. Huffman, 118 Pa. 58; Johns v. Johns, 244 Pa. 48; Harris v. Richey, 56 Pa. 395; Dill v. Westbrook, 226 Pa. 217; Ackerman v. Fisher, 57 Pa. 457.

*H. A. Heilman,* with him *R. A. McCullough,* for appellees.—Under the evidence a parol gift was proved: Bond v. Bunting, 78 Pa. 210; the fact that plaintiffs had not complied with the Act of May 31, 1901, P. L. 352, is not material as Barclay Nulton, defendants' ancestor and the purchaser of the land was aware that it had been held adversely for more than 21 years.

OPINION BY MR. JUSTICE MESTREZAT, January 11, 1915:

This is an action of ejectment to recover about seven acres of land in Rayburn Township, Armstrong County, and both the plaintiffs and defendants claim through their paternal grandmother, Mrs. Margaret R. Nulton, the common source of title. The defendants are the sons of Barclay Nulton, and they claim the premises through a deed made to him by his mother in June, 1903, and recorded in January, 1904. The plaintiffs are the son and daughter of McConnell Nulton, or Conn Nulton as he was familiarly known, and they claim title to the land in dispute under the statute of limitations. They alleged that their father entered into possession of the property in 1869 in pursuance of a parol gift to him by his mother, and continued to occupy it till his death in May, 1903. Margaret R. Nulton died in March, 1904, and her husband, in 1878. Miss Harry Nulton, one of the plaintiffs, was fourteen years of age at the death of her father, McConnell Nulton, and resided with her father and mother on the premises in dispute. Her mother died two days after her father, and she was then taken to a neighbor's house where she remained for a

week or two when her uncle, Barclay Nulton, took her to his home where she resided until 1910 when she became of age. George Nulton, the other plaintiff, and Harry Nulton's half-brother and many years her senior, lived in the West at the time of his father's death.

The learned court below submitted the case to the jury and a verdict was rendered for plaintiffs. Motions for a new trial and judgment non obstante veredicto being overruled, judgment was entered on the verdict, and the defendants have appealed.

There are numerous assignments of error, but the learned counsel for the appellants have stated the questions involved to be: (a) Did the court submit the question of title by parol gift to the jury and permit a recovery on this theory of the case; (b) Sufficiency of the evidence to show title by adverse possession on the part of a son as against the mother; (c) Sufficiency of the evidence to show notice of title by adverse possession to a purchaser within the meaning of section 6 of the Act of May 31, 1901, P. L. 352; and (d) Effect of laches by plaintiffs in bringing the action of ejectment.

We think there was abundant evidence to show that McConnell Nulton took possession of the premises in dispute under a parol agreement made with his mother in 1869 and that thereafter and until his death in 1903 he had the open, notorious and exclusive possession, exercising the dominion and performing the acts of a fee simple owner. The testimony introduced by the plaintiffs, if credible, shows that in 1867 McConnell Nulton was married and resided on his brother Barclay's farm in Rayburn Township. In 1869 he erected a dwelling house on the premises in dispute, removed thereto, and resided there until his death in May, 1903. He built a barn, kitchen and other structures on the land, quarried stone, cultivated a garden, raised fruit trees, built fences, repaired the buildings as needed, paid taxes, paid for insurance on the buildings, and in a general way acted as owner from the time he took possession in 1869 until

he died thirty-four years later. There was a division fence separating the piece of land claimed by McConnell from the other parts of the premises owned by his mother.

During his occupancy of the premises, McConnell always claimed to be the owner and so declared in conversations with numerous persons at different times who visited him at his home and who testified in the case. One of these witnesses says that his first conversation with him in which he claimed to be the owner was in 1871. Some of these witnesses testified that McConnell told them his mother gave him the property.

The plaintiffs also introduced many witnesses to show the declarations of Mrs. Margaret R. Nulton. They testified that she said the property belonged to Conn and that she had given it to him. One witness testified: "Q.—What did she (Mrs. Nulton) say? A.—I talked with her time and again at home and with the old judge (her husband) the same, they said it was McConnell's place. Q.—What did she say? A.—Why, it was given to him and he moved there and built this house." Another witness who lived with McConnell on this property from 1891 to 1897 testified that at Conn's suggestion he brought Mrs. Nulton to her son's house on one occasion where she spent part of the day. He says that Conn "was liable to drop off at any time" and he, in the presence of the witness, told her he wanted a deed to protect his wife and daughter, and that his mother replied: "You know Conn I have given you this property, this property is yours."

In 1894 Mrs. Nulton conveyed by deed a lot of ground adjoining the land in dispute and recognized and acknowledged her son's title by describing the property sold as north of McConnell's residence, and the boundary line as "beginning at a post on McConnell's line," and thence along said line. This deed was written by McConnell's brother, a lawyer who attended to his mother's business, and who resided in the vicinity of the property.

In 1881, three years after the death of her husband and twenty-two years prior to the death of McConnell, Mrs. Nulton employed an engineer to make a survey of the whole tract of land originally owned by her and of which the property now in dispute was a part. Having made the survey he made a plan or draft of the several divisions of the property made by her including the part sold for a water basin and the piece in the possession of her son, McConnell. The draft shows the boundary lines of the latter piece which is marked "6 acres and 75 perches strict, Conn Nulton." The engineer, now a member of the Armstrong County bar, testifies that he was employed and paid by Mrs. Nulton to make the survey and draft, and that he delivered the draft to her.

The testimony in the case, if believed, fully warranted the jury in finding that his mother made a parol gift to McConnell Nulton of the land, and that under that gift in 1869 he took possession of the premises as owner, and thereafter continued to hold such possession for thirty-four years until his death. We do not find it necessary to pass upon the validity of the parol sale, which is claimed by the appellee, but shall treat it as insufficient to pass the title as the court below did. The evidence, however, was ample to show that there was a parol gift of the land made by the mother to the son, and was, therefore, competent as showing how he went into possession of the premises. It was only shown for the purpose of establishing the adverse inception and holding of the possession by the donee, and not as vesting the title in him. The gift, though invalid under the statute of frauds and perjuries, shows that McConnell did not enter as a licensee or tenant in subordination to his mother's title, but as the owner of the premises, adversely and hostile to his mother's title. The invalidity of the gift did not affect the character of the donee's entry under it. It did not pass the title but it did import authority to the donee to take possession as the owner in hostility to his mother's title. McConnell Nulton, there-

fore, went into possession of the premises in 1869, not as a tenant at will of his mother nor in subordination to her title but as the owner of the land in his own right. Thereafter he held the property for himself and not for his mother. That both mother and son believed and intended the gift as valid and absolute and that the son took and held the premises adversely to his mother is shown by the fact, found by the jury, that he continued the possession thus taken for thirty-four years adversely and hostile to the title of his mother who during those years never challenged but recognized and acknowledged the validity of both his title and possession. This conduct of the mother is evidence of the absolute character of the gift. It is clear, therefore, that McConnell Nulton believed the gift absolute and efficacious to pass the title, and that he took possession and retained it with that understanding. The possession having been taken by him under these circumstances and continued adversely and exclusively for more than twenty-one years prior to his death, the title was vested in him by the statute.

While there is no testimony by any witness who was present at the time that McConnell Nulton took possession of the premises, yet there was sufficient evidence to warrant the jury in finding that it was taken under the gift by his mother and was so understood by both parties. A gift of land by parol, accompanied by an actual entry and possession, manifests the intention of the donee to enter and take as owner and not as tenant, and it equally proves an admission on the part of the donor that the possession is so taken: Sumner v. Stevens, 6 Met. 337. The parties were brought face to face not later than 1896 when the mother declared that she had given the property to her son. This declaration was frequently made by her on other occasions after McConnell went into possession. Mrs. Nulton declared on another occasion that the property was given to her son "and he moved in there and built this house." It will be recalled that the house was built in 1869 just after McConnell

moved to the premises. This with other testimony shows that the gift, admitted by his mother, was made in 1869 when McConnell Nulton took possession of the premises. This testimony is strengthened by the fact, shown by the plaintiffs' testimony, that McConnell Nulton from the time he entered into possession until his death claimed title to the property, treated it as his own in every respect, improving it, paying the taxes and insurance, thereby clearly manifesting his understanding from the inception of his possession that he, and not his mother, was the owner. The testimony establishing the parol gift and the entry in pursuance of it is all that could be expected or required after this great length of time. These transactions took place forty-four years before the trial of the cause, and it could hardly be expected that either the gift or taking possession could be shown by such evidence as would be required of recent events. The parties to the transaction and those who would know about it had been dead many years prior to the trial. McConnell Nulton had, as the plaintiffs' testimony shows, occupied the premises uninterruptedly and adversely to all claimants for thirty-four years from the day he entered the premises, and his right to do so was never challenged by his mother. Under all the circumstances, therefore, the definiteness and precision required of the proof of recent events must be relaxed and the presumptions which arise by reason of great lapse of time must be permitted to take the place of the evidence which had been destroyed by time. As said by AGNEW, J., in Richards v. Elwell, 48 Pa. 361, 367: "There is a time when the rules of evidence must be relaxed. We cannot summon witnesses from the grave, rake memory from its ashes, or give freshness and vigor to the dull and torpid brain."

Our conclusion as to the sufficiency of the evidence to sustain the plaintiffs' title is sustained by our cases. Graham v. Craig, 81 Pa. 459, was an action of ejectment brought against one who claimed under the statute of

limitations, depending upon adverse possession originating in a parol gift. In affirming the judgment for the defendant we said: "A parol gift of land may be invalid because of the statute of frauds and perjuries, but the donee entering into possession upon the gift holds for himself and not for the donor. A holding for the donor would be inconsistent with the nature of a gift, which imports an intention to give the title and right of possession to the donee. The donor, whose gift is invalid because of the want of a writing to evidence it, may recover the land, yet this is not because of a fiduciary relation requiring a restoration of the premises, but because his title did not at law pass from him. Hence, if he suffer his donee to remain in the enjoyment of his gift for twenty-one years he stops his remedy, and the statute of limitations ripens the inefficacious gift into a good title." In Campbell v. Braden, 96 Pa. 388, the defendant showed a parol gift from his father and the possession for more than twenty-one years. In reversing a judgment for the plaintiff, we said (p. 390) : "It may be conceded that the parol gift to Benjamin F. Campbell, the defendant below, by his father, Benjamin Campbell, was neither sufficiently definite in its terms, nor sufficiently executed, to vest in him a good title to the premises in dispute, but it must be remembered that, in this State twenty-one years adverse and uninterrupted possession does much to cure infirm titles. Such possession is, indeed, without more, title of itself......Now Benjamin Campbell died in 1876, something over twenty-one years after he had put his son into the possession of this property, and that he did not interfere in any manner with his son's claim of title, and that he did not disturb his possession during all this time, is, of itself, evidence of the absolute character of his gift. But, as we have before intimated, the gift of itself is of little account, though, even as to that, there was evidence enough to have gone to the jury, except as explanatory of how the defendant went into possession, that his claim was

in his own right, and not as a mere tenant at will under his father. For the real question is not so much what was intended by the donor, as what the donee's understanding was; what he claimed and did. Did he consider the gift absolute, and, under that idea, did he hold adversely to his father for the period of twenty-one years? If he did, that is a full answer to, and an end of this question of title. In that event the defendant's right is good as against any and every claimant whatever." In Bonnell v. Bonnell, 10 Sadler 419, we said: "We agree that the parol sale in this case was of no validity, but after one has been in the notorious, exclusive, and hostile possession of land for half a century, it does not make much difference whether he claims by parol title or no title at all, for the statute of limitations conclusively establishes his right."

Kennedy v. Wible, 8 Sadler 299, was ejectment in which the defense was the statute of limitations where the entry was made in pursuance of a parol gift. In sustaining a judgment for the defendant, we said: "This thing of attempting to take from a man land which he has claimed and peaceably occupied for more than thirty years, is a serious undertaking, and generally, as in this case, results in failure. The learned judge charged more favorably for the plaintiff than he had a right to require. An absolute and perfected gift from Isaac Wible to his son, John, was not necessary to the perfection of John's title under the statute. If he entered even under the pretense of a gift, and thenceforward claimed the property as his own, it would be sufficient if the other requisites of the statute were complied with." In the recent case of Monroe Water Supply Company v. Starner, 242 Pa. 18, the defense was adverse possession for more than twenty-one years preceded by a parol gift. It appeared from the evidence that about the time the donee entered into possession, the donor declared that he had given the premises to the donee, and that the land was hers. In sustaining a judgment for the

defendant it is said in the opinion of Mr. Justice STEW-
ART, inter alia: "The learned trial judge very properly
held that this evidence was insufficient to establish a
valid parol gift of the land. Nevertheless it had, if
believed, a two-fold significance. Considering the time
and circumstances under which it was made, if made,
it afforded sufficient basis for an inference that the orig-
inal entry was under the gift, however insufficient in
law the gift was; or, a finding that the continued oc-
cupancy thereafter was in itself an unqualified assertion
of a right to the land hostile and adverse to the holder
of the legal title."

While the court's charge on the point is not as clear
as it might have been, we do not think the jury could have
understood that they were to determine the sufficiency of
the plaintiffs' title under the parol gift. The defendants'
eighth point, the subject of the third assignment of error,
should have been affirmed. As already pointed out the
purpose of introducing evidence of the parol gift was not
to show title but merely to show the hostile inception of
McConnell Nulton's possession. Title by a parol gift
and title by the statute of limitations are entirely sepa-
rate and distinct, but both may be introduced as a de-
fense to an action of ejectment: Irwin v. Cooper, 92 Pa.
298. The testimony may be insufficient to sustain the one,
and sufficient to sustain the other, thereby justifying
a verdict for the defendant. The refusal of the defend-
ants' point did them no harm in view of the explicit in-
structions contained in the charge where it was fre-
quently said that before the plaintiffs could recover they
must show that their father held the land adversely and
continuously in hostility to the title of Mrs. Nulton for
more than twenty-one years. In one part of the charge,
the learned judge said: "We say to you, gentlemen of
the jury, before these plaintiffs can sustain their claim
in this case, they must prove to you by a preponderance
of the testimony, that their father, Conn Nulton, did
hold the actual, continued, uninterrupted, notorious,

distinct, adverse and hostile possession of this property for twenty-one years."

It is true that the plaintiffs never filed a statement of their claim of title by adverse possession, and that they were not in possession when Barclay Nulton purchased the land from his mother. We think, however, that they were not required to do so under the facts of this case, for the reason that Barclay Nulton had full notice of his brother's title to the premises and how that title was acquired. The Act of May 31, 1901, P. L. 352, does not require a statement of the claim to be made and recorded when the purchaser has notice of the title. The act protects only a purchaser, a mortgagee or judgment creditor for value, without notice. Barclay Nulton was a lawyer, and resided in the immediate vicinity of his mother and his brother who lived on this land. He knew by observation when his brother took possession of the land and the continued adverse holding of it by him until the latter's death in May, 1903, a period of thirty-four years. Very shortly after his brother's death, he went to his mother and requested her to make a deed to him for "that property of Conn's." His mother made no reply. He called on her again, accompanied by a lawyer, and presented a deed for her to sign with the threat that if she declined he would "gather up my (his) papers and take them to the court house, that I have against Conn." His mother at this time was in her eighty-ninth year. She executed the deed less than two months after the death of her son, McConnell, who to his brother's knowledge had open, notorious and adverse possession of the property for thirty-four years. Under the evidence, therefore, the jury was warranted in finding that Barclay Nulton was not a purchaser without notice, and hence the Act of 1901 could not afford protection to him or to his sons claiming this property through him.

The contention of the defendants that the plaintiffs are estopped from maintaining this action by reason

of laches cannot be sustained. Harry Nulton, one of the plaintiffs, was a child of fourteen years of age at the time her father died and resided on the premises with him and her mother who died two days after her father. For the first week or two, the child was taken by a neighbor and cared for. Barclay Nulton then took her to his home and she remained there. This she did until she became of age in 1910. This suit was brought in September, 1912. The deed was made to Barclay Nulton within eight weeks after his brother's death, and kept off the record until about three months before his mother's death. No consideration passed from Barclay Nulton to his mother save a promise to pay her funeral expenses. He paid her no money. It is rather difficult to see why Barclay Nulton or his children claiming this property through him should, under the circumstances, claim that suit was not instituted against him to recover these premises by the minor daughter of his dead brother. He took the child to his home within a week or two after her father's death and against her protest, and kept her there for about seven years, until she became of age. During the time she lived with him, he obtained the deed for the property. She had no guardian nor anyone to look after her interests save Barclay Nulton. Had he intended to set up a plea of laches to a suit against him by this girl, it was his duty to have had a guardian appointed for her who could have protected her interests. He will not be permitted to take advantage of his own wrong by keeping her in his own house for seven years, and then allege that she, by her delay, is estopped from bringing this action. Her half-brother was living in the West at the time of the death of his father, and was not familiar with his title to the premises.

The judgment is affirmed.