653 A.2d 671

**Michael S. PLAUCHAK and Ann K. Plauchak, his wife**

v.

**Gerald W. BOLING and Linda L. Boling, his wife, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 16, 1994.

Filed Jan. 17, 1995.

158

Edward C. Morascyek, Washington, for appellants.

Douglas R. Nolin, Washington, for appellees.

Before ROWLEY, P.J., and HUDOCK and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from a final judgment[1] granting ejectment and quieting title to a tract of land. We affirm.

Michael S. and Ann K. Plauchak, appellees, own a tract of land situated in Washington County, Pennsylvania, which they purchased following a mortgage foreclosure sale. This property was formerly owned by Carl Holmes, Jr., and occupied by his sister, Evelyn Morris. Ownership of the land was acquired by the Resolution Trust Corporation as receiver for American Savings and Loan Association of Brazoria County via Sheriff's deed dated December 3, 1990, and duly recorded with the Recorder of Deeds of Washington County. The Resolution Trust Corporation transferred title to appellees by a subsequently recorded deed dated September 25, 1992. On December 18, 1992, appellees also acquired a quit-claim deed from Carl Holmes, Jr. and Evelyn Morris covering the land conveyed in the sheriff's sale as well as an adjacent parcel of land (hereinafter respectively referred to as "Tract No. 1" and "Tract No. 2").

---

1. Appellants have incorrectly characterized this appeal as stemming from an order denying post-trial relief. It is well-settled that no appeal will lie from an order dismissing exceptions to the decision entered after a non-jury trial. Pa.R.A.P. No. 301, 42 Pa.C.S.A.; *Black Top Paving Co., Inc. v. John Carlo, Inc.,* 292 Pa.Super. 404, 437 A.2d 446 (1981). However, because final judgment was entered in this case and the notice of appeal was timely filed thereafter, we have jurisdiction to consider the merits of the appeal. *See* Pa.R.A.P., Rule 905(a), 42 Pa.C.S.A.

In 1989, appellants Gerald W. and Linda L. Boling purchased two contiguous properties which lie next to Tract No. 2. Robert A. Lunn, a predecessor in title to the Bolings' lands, planted a hedge row in 1957 on what he believed to be the boundary line between his property and that portion of the Holmes property now known as Tract No. 2. From 1957 until mid-October of 1991, the Holmes family treated the land on their side of the hedge row as their own, mowing the grass and performing other routine maintenance. They installed a septic system on Tract No. 1 with a leach bed that extends into Tract No. 2. The Holmeses parked a house trailer on Tract No. 2 for an extended period of time. They also cleared and installed a gravelled parking area on Tract No. 2, which served their dwelling house erected on Tract No. 1.

From 1957 through May of 1989, when the appellants purchased their current property, all predecessors in title to the Bolings recognized the boundary of their property as corresponding to the hedge row planted by Mr. Lunn. However, since October of 1991, appellants have planted hedges, pine trees and maple trees, and have built fences, erected no trespassing and private property signs, and placed a barricade of rubber tires on Tract No. 2. Appellants have also removed the gravelled parking area from Tract No. 2.

This appeal stems from an action in ejectment and/or to quiet title which the appellees instituted in 1993 concerning Tract No. 2. The Honorable Thomas D. Gladden, President Judge of Washington County, heard testimony at hearings conducted on September 21, 1993 and November 9, 1993. On January 31, 1994, Judge Gladden issued an opinion and order ejecting the Bolings from the property at issue and granting possession to the Plauchaks, and confirming the Plauchaks' ownership in fee simple absolute. The trial judge determined that the hedge row planted by Mr. Lunn had been treated as a consentable [2] boundary line by all predecessors in interest

2. At common law, this term is usually spelled "consentible." *See, e.g.,* *Black's Law Dictionary* 277 (5th ed. 1979). However, the correct usage in Pennsylvania is "consentable." *Webster's New Universal Unabridged Dictionary* 388 (2d ed. 1983).

since 1957, and that this acquiescence had continued for longer than twenty-one years. Judge Gladden premised his legal conclusions upon an extensive list of factual findings which we need not reiterate here. *See* Trial Court Opinion dated January 31, 1994 at 1–6.

Appellants filed a document titled "Request for Post–Trial Relief" on February 9, 1994. Appellees then petitioned the court for attorney's fees. The lower court denied both motions, and entered final judgment on April 12, 1994. The instant timely appeal followed presenting a single issue for our consideration:

Whether title to the disputed tract of property, Tract No. 2, will vest in Plaintiffs either by adverse possession or under the doctrine of consentable boundary when there is no reference to the disputed tract in any deed purporting to transfer ownership of property owned by Plaintiffs or their predecessors in title until the Plaintiffs acquired a Quit Claim Deed [on] December 18, 1992, which was approximately three months after Plaintiffs purchased their property?

Before appraising the validity of appellants' arguments, however, we must first address certain procedural irregularities stemming from the manner in which the underlying case was initiated.

It is procedurally improper to simultaneously commence both an action in ejectment and an action to quiet title regarding the same parcel of real estate. Ordinarily, the plaintiff in an action to quiet title must be in possession of the land in controversy; if he is out of possession, his sole remedy is an action in ejectment. *Grossman v. Hill,* 384 Pa. 590, 593, 122 A.2d 69, 71 (1956). An action to quiet title may be brought only where an action in ejectment will not lie. *Id.* at 594, 122 A.2d at 71; Pa.R.C.P. No. 1061(b)(2), 42 Pa.C.S.A. Ejectment, being a possessory action, can be maintained if the plaintiff has a right to immediate possession with the concomitant right to demand that the defendant vacate the land. *Grossman v. Hill,* 384 Pa. at 593–94, 122 A.2d at 71.

 Permitting an out-of-possession plaintiff to maintain an action to quiet title is impermissible because it constitutes an enlargement of the plaintiff's substantive rights as defined by statute, and thus exceeds the court's jurisdiction to proceed. *Sutton v. Miller*, 405 Pa.Super. 213, 223–224, 592 A.2d 83, 88–89 (1991). Because plaintiffs/appellees were acting under color of legal title provided by a quit claim deed granting the right of immediate possession, and because appellants were in undisputed physical possession of the land in question by reason of their actions in planting trees, erecting a fence and placing a barricade of tires, the correct practice in this case was to seek ejectment and not quiet title. *See generally: Id.* (equitable owner under contract for sale, with no right of immediate possession, may maintain suit to quiet title); *Brennan v. Shore Brothers, Inc.*, 380 Pa. 283, 285, 110 A.2d 401, 402 (1955) (ejectment is appropriate where plaintiff is not in possession of property); *Buck v. Brunner*, 167 Pa.Super. 142, 143, 74 A.2d 528, 528 (1950) (ejectment improper where plaintiff is in possession of disputed property); Pa.R.C.P. No. 1061(b)(1), 42 Pa.C.S.A. (action to quiet title may be brought to compel an adverse party to commence an action of ejectment). *But see Hoffman v. Bozitsko*, 198 Pa.Super. 553, 182 A.2d 113 (1962) (purchaser at judicial sale has option to obtain possession of purchased property either by ejectment or quiet title).

 Nevertheless, appellees' use of an incorrect form of action is not fatal to the relief granted by the trial court. Even where a plaintiff mistakenly institutes an action to quiet title instead of an action in ejectment, the appropriate remedy is to permit the plaintiff to amend his or her pleadings to conform to the proper action. *Sutton v. Miller*, 405 Pa.Super. at 224–225, 592 A.2d at 89. *See also* Pa.R.C.P. No. 1033, 42 Pa.C.S.A. (permitting a party to change the form of action at any time either by leave of court or with the consent of the adverse party). In this case, appellees actually maintained an action in ejectment, albeit improperly in conjunction with an action to quiet title. Therefore, for purposes of the instant appeal, we will consider the claims of the parties solely in the

context of an action in ejectment. *See Sutton v. Miller, supra* (appellate court may *sua sponte* amend pleadings to conform action to quiet title to proper request for ejectment).

As this Court has explained,

The plaintiffs' burden in an action in ejectment at law is clear: they must establish the right to immediate exclusive possession. Recovery can be had only on the strength of their own title, not the weakness of [the] defendant's title. The crux of an ejectment action, therefore, rests with the plaintiffs' ability to identify, by a preponderance of the evidence[,] the boundaries of a parcel of land to which they are out of possession but for which they maintain paramount title.

*Doman v. Brogan,* 405 Pa.Super. 254, 263, 592 A.2d 104, 108 (1991) (citations omitted).[3] Where, as here, the trial court sits as the sole finder of fact, an appellate court will not reverse on appeal unless the trial judge's findings are unsupported by competent evidence. *Id.* at 267, 592 A.2d at 110. The question of what constitutes a boundary line is a matter of law while the *location* of that boundary line is a matter for the trier of fact. *Plott v. Cole,* 377 Pa.Super. 585, 589–90, 547 A.2d 1216, 1219 (1988). In a boundary dispute case, as in a general action in ejectment, we will not reverse the trial judge's factual findings if they are supported in the certified record. *Id.*

Appellants contend that the trial court erred in determining that appellees are entitled to fee simple absolute ownership of Tract No. 2 based on the doctrines of adverse possession and consentable boundary. However, despite appellants' assertions to the contrary, the trial judge did not consider adverse possession in his decision. Judge Gladden's opinion plainly demonstrates that he applied only the doctrine of consentable line to this case.

3. *Compare Cox's, Inc. v. Snodgrass,* 372 Pa. 148, 152, 92 A.2d 540, 541–42 (1952) (burden of proof in an action to quiet title is on plaintiff); *Albert v. Lehigh Coal and Navigation Co.,* 431 Pa. 600, 607, 246 A.2d 840, 843 (1968) (in quiet title action, plaintiffs can recover only on strength of their own title and not upon weakness of defendants' title).

■■■■ The doctrine of consentable·line is a rule of repose for the purpose of quieting title and discouraging confusing and vexatious litigation. *Plott v. Cole,* 377 Pa.Super. at 592, 547 A.2d at 1220. *See generally* ·George M. Elsesser, Note, *Consentable Lines in Pennsylvania,* 54 Dick.L.Rev. 96 (1949) (discussing the history and application of the doctrine of consentable line in this Commonwealth). There are two ways in which a boundary may be established through consentable line: (1) by dispute and compromise, or (2) by recognition and acquiescence. *Niles v. Fall Creek Hunting Club, Inc.,* 376 Pa.Super. 260, 267, 545 A.2d 926, 930 (1988) (*en banc*). As the *en banc* court explained in *Niles,* the doctrine of consentable line is a separate and distinct theory from that of traditional adverse possession, although both involve a twenty-one year statute of limitation. *Id.* at 267–68, 545 A.2d at 930. Under the doctrine of consentable line,

> [i]f adjoining landowners occupy their respective premises up to a certain line which they mutually recognize and acquiesce in for the period of time prescribed by the statute of limitations, they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one. *See Adams v. Tamaqua Underwear Co.,* 105 Pa.Super. 339, 161 A. 416 (1932); *see generally,* 12 Am. Jur.2d, Boundaries §§ 85–90.

*Plott v. Cole,* 377 Pa.Super. at 593, 547 A.2d at 1221. The establishment of a consentable line is not a conveyance. of land within the meaning of the Statute of Frauds[4] because no estate is thereby created. *Hagey v. Detweiler,* 35 Pa. 409, 412 (1860). Therefore such a line may be initiated by oral agreement and proved by parol evidence. *Beals v. Allison,* 161 Pa.Super. 125, 128, 54 A.2d 84, 85 (1947).

■■■■ The requirements for establishing a binding consentable line by recognition and acquiescence are: (1) a finding that each party has claimed the land on his side of the line as his own; and (2) a finding that this occupation has occurred for the statutory period of twenty-one years. *Id.,* 377 Pa.Super. at 594, 547 A.2d at 1221. *See Hagey v. Detweiler, supra*

4. 33 P.S. § 1.

(applying twenty-one year limitation period to controversy involving boundaries established under doctrine of consentable line). *Accord Dimura v. Williams*, 446 Pa. 316, 286 A.2d 370 (1972). In such a situation, the parties need not have specifically consented to the location of the line. *Inn Le'Daerda, Inc. v. Davis*, 241 Pa.Super. 150, 163, 360 A.2d 209, 215 (1976). "It must nevertheless appear that for the requisite twenty-one years a line was recognized and acquiesced in as a boundary by adjoining landowners." *Id.* at 163, 360 A.2d at 215–16 (citing *Miles v. Pennsylvania Coal Co.*, 245 Pa. 94, 91 A. 211 (1914); *Reiter v. McJunkin*, 173 Pa. 82, 33 A. 1012 (1896)).

The testimony of Muried A. Pepling, a civil engineer called as an expert witness by the Bolings, established that there is a discrepancy between the physical measurements of the land tracts in question and the metes and bounds descriptions on the deeds which created the original subdivisions between 1910 and 1918. N.T. 11/9/93 at 13–17.[5] The result of this discrepancy is that the two adjacent parcels of land now owned by the Bolings, Tract No. 1 owned by the Plauchaks, and Tract No. 2 claimed by both the Plauchaks and the Bolings are not consistently referenced and fully covered by the metes and bounds descriptions in the deeds memorializing the conveyances which have occurred since 1918. It is undisputed that the Plauchaks' deed from The Resolution Trust Corporation contains a metes and bounds description which covers only Tract No. 1. It is equally undisputed that the deed which the Bolings received from their immediate predecessor in title conveys a property limited to one hundred twenty (120) feet of road frontage. *Id.* at 31 (testimony of Gerald Boling). *See* Trial Court Opinion dated January 31, 1994 at 5 (Factual Finding No. 15).[6] Even Mr. Boling con-

---

5. The divergence between the lie of the land and the metes and bounds descriptions in the various deeds in the chain of title to the properties at issue here is severe enough that if a surveyor were to place iron pins in the ground and run property lines exactly according to the deed calls, the lines would bisect the existing dwelling houses. N.T. 11/9/93 at 14 (testimony of Muried A. Pepling).

6. This factual finding reiterates the metes and bounds description contained in the deed conveying land to the Bolings. The language in

cedes that he and his wife would receive one hundred and sixty (160) feet of frontage, with a consonant increase in acreage, if the Bolings are deemed to be the owners of Tract No. 2. N.T. 11/9/93 at 43–44 (testimony of Gerald Boling).

The record is completely clear that Mr. Lunn, one of appellants' predecessors in title, acted in 1957 to plant a hedge row for the specific purpose of creating a visible demarcation separating what he viewed as his property from that portion of his neighbors' land now claimed by the Plauchaks and designated as Tract No. 2. N.T. 9/21/93 at 48, 56–59. None of the subsequent owners in either the Bolings' or the Plauchaks' chain of title disputed the propriety of this hedge row boundary from 1957 until at least 1989. During this time, all record owners, including the Bolings' immediate predecessor in interest, recognized the hedge row as the true and correct border between the properties and acted accordingly. *See id.* at 41–59, 60–70, 71–90, and N.T. 11/9/93 at 61–68 (testimony of Robert Lunn, Vernon Garland, Carl Holmes, Jr. and Evelyn Morris concerning yard maintenance, grass cutting, the location of the dwelling houses, placement of house trailers, and construction projects on both sides of the hedge row). *See also* Trial Court Opinion dated January 31, 1994 at 3–6 (Factual Findings No. 5–23, premised upon the above testimony).

> The general rule is that one who claims title to property through another, regardless of the nature of the transfer whether by the act of the parties or the act of law, is bound by earlier acts or declarations of his predecessor and takes the title *cum onere*. Under this rule all acts and declarations of the owner of land made during the continuation of his interest tending to show the character or extent of his possession or interest, or the location of boundaries, are competent evidence not only against himself but also against those who claim through or under him.

· the deed establishes a frontage along Legislative Route 62183 for a distance of 120.04 feet. *See* Plaintiff's Exhibit "K" (copy of deed dated May 26, 1989 from Vernon K. and Linda L. Garland to Gerald W. and Linda Lee Boling).

*Dawson v. Coulter,* 262 Pa. 566, 571, 106 A. 187, 188 (1919) (citations omitted).

■ Our careful scrutiny of the record certified to this court has convinced us that Judge Gladden correctly ruled that a consentable boundary was established between the Bolings' land and Tract No. 2 by recognition and acquiescence, and that this consentable line existed for more than twenty-one years. Pennsylvania law is clear that successive owners in privity to one another may tack the possessory rights of a prior owner which were acquired through the establishment of a consentable line. *Wittig v. Carlacci,* 370 Pa.Super. 584, 589, 537 A.2d 29, 32 (1988). It is undisputed that Opal Holmes and her husband purchased Tract No. 1 in 1957 as entireties property. Furthermore, neither party contests the fact that Carl Holmes, Jr. was in privity to his mother, Opal Holmes, when she transferred Tract No. 1 to him in 1971.[7] Therefore we agree with Judge Gladden's determination that Carl Holmes Jr., the record owner of Tract No. 1 in 1978, became vested in that year with ownership of Tract No. 2 at the expiration of the statutory period required for establishment of a consentable line.

■ Where a consentable line has been clearly established by dispute and compromise, the line becomes binding under application of the doctrine of estoppel after twenty-one years. *Niles v. Fall Creek Hunting Club, Inc.,* 376 Pa.Super. at 267, 545 A.2d at 930 (citing *Newton v. Smith,* 40 Pa.Super. 615, 616 (1909)). We see no reason why this rule should not also apply in a case where the consentable line was established by recognition and acquiescence. The problem presented by this appeal is neither unique nor new to the courts of this Commonwealth. As our Supreme Court recognized in 1835,

There is no survey of ordinary size, the lines of which will measure exactly to the corners, or to the places where they once stood; hence, every surveyor in tracing old surveys

7. Mrs. Holmes' husband predeceased her, and thus was not involved in the 1971 conveyance.

expects to find and does find the length of every line differing more or less from his draft.

*Martz v. Hartley,* 4 Watts 261, 263 (1835). Therefore our courts have always favored boundaries established by consentable line, especially where, as here, the courses and distances on the ground do not correspond to the metes and bounds contained in the paper record. *Id. See also Perkins v. Gay,* 3 Serg. & Rawle 327 (1817) (confirming the applicability of the ancient doctrine of consentable line to an action in ejectment).

What a man has possessed long enough to be protected by the statute of limitations he has a right to; the place in which he and his neighbor have said for twenty-one years his line is, must continue to be the place where it is. There is no other doctrine on which titles can be safe....

*Martz v. Hartley,* 4 Watts at 264. We therefore conclude that the Bolings are estopped from denying the boundary line to which their predecessors in title acquiesced for more than twenty-one years.

We note that appellants have challenged the validity of appellees' title to Tract No. 2 on the grounds that the Plauchaks lack privity to all the ownership rights enjoyed by Carl Holmes, Jr. We agree with appellants that a deed, in itself, creates no privity as to land outside its calls. *Wittig v. Carlacci,* 370 Pa.Super. at 589, 537 A.2d at 32 (quoting *Gerhart v. Hilsenbeck,* 164 Pa.Super. 85, 88, 63 A.2d 124, 126 (1949)). Our courts have consistently held that acceptance of a deed describing specific boundary lines confines the grantee to the area within the boundaries and does not convey inchoate rights acquired by uncompleted adverse possession. *Id.* (citing *Masters of South Fork v. Local Union No. 472, United Mine Workers of America,* 146 Pa.Super. 143, 22 A.2d 70 (1941)). The key points here are that the rights of Carl Holmes, Jr. to Tract No. 2 do not stem from adverse possession and they were no longer inchoate in 1991 when the Sheriff's deed conveyed Tract No. 1 to The Resolution Trust. As already explained, Mr. Holmes' rights to Tract No. 2 vested in 1978.

 Appellants have cast their argument in this regard according to the strict rules pertaining to adverse possession rather than to those governing boundaries established under a consentable line by recognition and acquiescence. However, even on appellants' own terms, their claim must fail. Pennsylvania law has long held that one who occupies land adversely for the prescriptive period gains an absolute, marketable title, with the attendant right of possession. *O'Hara v. Richardson*, 46 Pa. 385, 390–91 (1863); *Schall v. Williams Valley Railroad Co.*, 35 Pa. 191, 204–06 (1860). Title thus attained may be divested only in the manner in which title acquired by formal grant or conveyance may be divested and is not lost by "neglecting to keep up the possession." *Schall v. Williams Valley Railroad Co., supra* at 206. Title acquired by adverse possession extinguishes all prior claims, including those asserted under color of paper title. *Philadelphia Electric Co. v. City of Philadelphia*, 303 Pa. 422, 428–29, 154 A. 492, 494 (1931). Rights under the paper title are extinguished, and the purchaser of a paper title may not ordinarily, prevail. *Schall v. Williams Valley Railroad Co., supra.*

 It is true that every person who acquires title by adverse possession who subsequently departs from possession should file a written statement of his claim. 68 P.S. § 81. When filed and recorded, such a statement becomes constructive notice of the claim. *Id.* § 85. However, failure to file a statement in the substantial form set forth at 68 P.S. § 82 does not defeat the title as against a purchaser who has either actual or constructive notice of the new title by adverse possession. *Nulton v. Nulton*, 247 Pa. 572, 583, 93 A. 630, 633 (1915). Nor does failure to file and record a statement prevent a claimant from maintaining an action in ejectment. *Id.*

Appellants have never claimed that they purchased their property without actual notice that Mr. Holmes, the owner in possession in 1989, was physically occupying Tract No. 2.[8]

---

**8.** The deed conveying the Lunn/Garland property to the Bolings is dated May 26, 1989. Mr. Holmes testified that he personally moved from the properties comprising Tracts No. 1 and 2 after his marriage

Indeed, appellants could not justifiably maintain that they lacked actual notice of Mr. Holmes' ownership of Tract No. 2 in light of Mr. Bolings' testimony. Mr. Boling stated that when he and his wife purchased their property, the large hedges planted by Mr. Lunn were completely visible as was the paved parking area installed by the Holmes family on Tract No. 2. *See* N.T. 11/9/93 at 47–50. We note that appellants have cited neither case law nor statute which supports the proposition that Carl Holmes, Jr. was required to subject all of his land to mortgage lien or to convey more than the trust company sought upon mortgage foreclosure. Thus, according to their own argument, appellants have failed to explain either the manner in which their claim to Tract No. 2 is superior to that of Carl Holmes, Jr., or why Mr. Holmes could not separately convey his interest in Tracts No. 1 and 2 to different grantees.

We are convinced that Judge Gladden correctly interpreted Pennsylvania law as it pertains to this case. Moreover, the certified record supports the factual findings of the trial judge sitting without a jury. As we can discern no basis upon which to grant appellants' request for relief, we affirm the trial court's decision.

Judgment affirmed.

on May 14, 1989. N.T. 9/21/93 at 84. However, his mother and sister continued to occupy both Tracts No. 1 and 2 with Mr. Holmes' consent. *Id.* at 87–88. Mr. Holmes' sister, Evelyn Morris, testified that her brother told her that she could stay on the property as long as she desired to do so if she agreed to take care of their mother, who was ill. N.T. 11/9/93 at 66. Opal Holmes, the mother, died sometime after May of 1989, but Ms. Morris lived on Mr. Holmes' property with her children until they were evicted in 1991 pursuant to the mortgage foreclosure action. N.T. 9/21/93 at 87.