# Irwin *versus* Cooper et al.

1. A party claiming to hold land under a parol sale may set up the Statute of Limitations to protect his title.

2. The statute is not so inconsistent with an equitable defence as to render it inadmissible. The statute is applied with the same effect in a court of equity as in a court of law.

3. After a lapse of twenty-seven years, it is unreasonable to require the same strictness of proof in establishing a parol sale of land as is requisite where the transaction is recent.

4. The court below required the defendant to elect whether he would defend under a parol purchase or the Statute of Limitations and said: "To defend under a merely equitable defence, such as a parol purchase, is, as a defence, inconsistent with a defence under the Statute of Limitations, which is purely legal." *Held,* that this action and instruction of the court were erroneous.

November 25th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

Error to the Court of Common Pleas of *Mercer county:* Of October and November Term 1879, No. 170.

Ejectment brought July 25th 1878, by Samuel L. Cooper, Abraham P. Cooper, John A. Cooper and William B. Cooper, heirs and legal representatives of William Cooper, deceased, against James C. Irwin, for one-third of ninety-six acres of land in French Creek township, Mercer county, Pennsylvania. In 1839 Samuel Cooper, grandfather of plaintiffs, owned this land, and on April 10th 1839, made his last will, which was duly proven and recorded May 21st 1839, in which he made this provision: "I will that the place be equally divided among my three sons, William, John and Abraham, when Abraham comes of age, if they stay at home and work the place till they respectively come of age, and that their mother have her living off the proceeds of the place as long as she remains in her widowhood."

William Cooper, the eldest son, and father of plaintiffs, was born on June 28th 1821, and attained his majority on June 28th 1842. Abraham, the youngest son, under whom defendant claimed the land, was born on November 13th 1828, and attained his majority

[Irwin v. Cooper.]

November 12th 1849, which, according to the father's will, was the time when the place was to be divided among the three sons, William, John and Abraham. Soon after the father's death, in 1839, the sons all left home to learn trades. William learned the cabinet-making trade, and he was never on the farm until after he acquired his trade. After acquiring his trade he married and settled in Utica, three miles distant, and there remained until he died in 1857. Though William attained his majority in June 1842, three years after his father's death, he never resided on or took any interest in the farm after that date, but worked at his trade and provided for his own family.

Abraham, the youngest son, became a blacksmith, and worked at his trade at various places until 1851, when he was in his twenty-third year. From 1839 till 1851, the mother remained on and managed the farm as best she could, and tried to make a living for herself and two daughters. The place was in miserable condition, only twelve or fifteen acres cleared, and that poorly done, fences poor, and having no suitable buildings.

Such being the condition of affairs, the mother, William and Abraham, all being anxious and willing to do something to change this condition, met at the house of James Lee, a neighbor, some time in 1851 to make some family arrangement, or amicable agreement or contract, about the place, to carry out the father's will, and provide the mother a living from the proceeds of the farm. At this neighbor's house the two sons met and, in the presence of their mother and James Lee, and according to the wishes of the mother and of William himself, Abraham agreed to take the mother and provide for her during her life for William's interest in the farm, and William agreed to give Abraham a quit-claim deed for his interest in the place for so keeping his mother. Whether or not the quit-claim deed was ever executed and delivered, could not be shown, as both William and Abraham were dead, but the contract was distinct and positive in its terms and subject-matter. Under and in pursuance of this contract, Abraham immediately took exclusive possession of the farm, occupied and improved it until 1865, when he sold it to James C. Irwin, the defendant. He also supported and provided for the mother from 1851 till the time of her death, which occurred in 186–.

At the time this contract was made in 1851, William resided in Utica, three miles distant, and there remained until his death in 1857; and during these years no word of dissent or of dissatisfaction was ever heard from, nor was any claim ever made by him to the land, but, on the contrary, he repeatedly expressed his entire satisfaction with his contract with Abraham.

On May 2d 1852, John, the other brother, conveyed his interest in the farm to Abraham for a small sum, thus vesting in Abraham the entire title to the farm.

[Irwin *v.* Cooper.]

William lived at Utica till 1857, six years, and his family have resided there ever since, and his sons, the plaintiffs, came of age respectively: Samuel L., in March 1868, Abraham P., in July 1870, John A., in March 1873, and William B., in July 1875.

At the trial, the court charged the jury as follows:

" The plaintiffs' title is perfect in this case, for the recovery of .one undivided one-third part of the premises described in the writ; and we do not feel warranted in permitting you, from the evidence in the case, to find that there was a parol sale by William Cooper to Abraham Cooper; therefore, your verdict will be in favor of the plaintiffs for the one undivided one-third part of the land described in the writ."

The verdict was for plaintiffs accordingly.

The following assignments of error by defendant, will show the questions raised in the case.

The court erred;

1. In the order requiring defendant's counsel to elect his defence, which order was as follows:

" The defendant's counsel, in their opening, having substantially stated, that if the defence of a parol purchase failed, they would then set up the Statute of Limitations as a defence; the court demands of the defendant. that he elect to defend either under a parol purchase by him or his grantor, or under an adverse possession of twenty-one years before suit brought by him or those under whom he defends.

" To defend under a purely equitable defence, such as a parol purchase, is, as a defence, inconsistent with a defence under the Statute of Limitations, which is purely legal."

Defendant, under this direction from the court, elected to defend under a parol purchase of the land in controversy, by his grantor from William Cooper.

2. In answering plaintiffs' point in the affirmative, which point and answer are as follows:

That under the law and the evidence in this case plaintiffs are entitled to recover. ·

.Ans. " The above point is affirmed."

3. In answering the defendant's point in the negative, and refusing to submit the question to the jury, which point and answer are as follows:

That if the jury believe from the evidence of James Lee and others, that William Cooper and Abraham Cooper, made a contract or agreement in 1851 or in 1852, by which Abraham was to support and maintain their mother until her death; and that in consideration of such support and maintenance, said William Cooper was to quit-claim to Abraham, all his interest in the land in controversy; and that in pursuance of such contract and agreement, Abraham did support and maintain his mother until her

[Irwin v. Cooper.]

death; and did take actual and exclusive possession of said land, and claim it as his own, and made valuable improvements thereon; and did continue such actual and exclusive possession and claim by himself and his tenants, until he sold it to defendant in 1865; and that the defendant continued such actual and exclusive possession and claim ever since, making a period of more than twenty-five years from the time said contract was made before suit was brought; then that would be such a parol sale and purchase of William's interest in said land, and carrying out and completing of the same by the parties, as would be enforced by a chancellor, and would be so far executed by the parties, that it would be unjust and inequitable to rescind the same, and the plaintiff cannot recover.

Ans. "The law is correctly stated in this point, but there is not sufficient evidence to warrant the jury in finding the facts necessary to support it. Thus explained, we refuse to affirm it, so as to leave the question to the jury."

4. In the instruction contained in the above charge.

*Griffith & Son,* for plaintiffs in error.—Where a parol contract of sale is precise as to its terms and subject-matter, and the vendee has taken possession in pursuance of it, and made valuable improvements with the assent of the vendor, it is not within the Statute of Frauds: Hart et al. *v.* Carroll, 5 Norris 510.

The order of the court requiring the defendant's counsel to elect to defend under the parol purchase and excluding all consideration and effect of the Statute of Limitations on the defence set up, was error; it did manifest injustice to the defendant, and precluded him from presenting his defence to the jury in the way he was entitled to. If the proceeding or action is an equitable one, a substitute for a bill in equity for specific performance, then, as we understand the Statute of Limitations, equity follows the law, and this court has said in Bull *v.* Towson, 4 W. & S. 557, " In equity courts, twenty years is a bar to any claim." In Hamilton *v.* Hamilton, 6 Harris 20, " The Statute of Limitation is applied with the same effect in a court of equity as in a court of law," and in Bock *v.* Lauman, 12 Harris 439, " In relation to lapse of time equity follows the Statute of Limitations." See also Richards et al. *v.* Elwell et al., 12 Wright 361; Willey et al. *v.* Day et al., 1 P. F. Smith 51.

It was the duty of the court to have submitted the cause to the jury, with proper instructions as to the effect of the lapse of time or the Statute of Limitations, either as a complete bar to the plaintiffs' claim, or as raising a presumption of a deed or quit-claim from the vendor to the vendee, especially as the parol sale had occurred more than twenty-seven years before. There was positive proof by one witness (who saw the parties face to face) of the contract, its terms and subject-matter, and that the vendee took immediate possession

of the land, and that the contract had been made more than twenty-seven years before suit brought, and proof by another witness, who had heard the vendor recite the contract and express his approbation with it and the terms of sale; and proof by these and many other witnesses, of the continued, exclusive and notorious possession of the land maintained by the vendee and the defendant from 1851 to the present time; and taxes paid by them all those years, and no dispute about the subject-matter or boundaries of the land; yet the court compelled the defendant and his counsel to ignore the Statute of Limitations, and applied to the parol contract the rigid and exact rules applicable only to contracts of a recent date, and outside of the operation of the Statute of Limitations.

*Stranahan & Mehard*, for defendants in error.—The defendant's proofs do not meet the requirements of the rules laid down in Hart et al. *v.* Carroll, *supra.* Applying the principles laid down in the rules in the above case, it is not possible to sustain the defendant's claim of a parol contract for the purchase of the land in dispute, or for a chancellor to decree specific performance thereof.

Mr. Justice PAXSON delivered the opinion of the court, January 5th 1880.

If the evidence offered by the defendant below of the parol sale by William Cooper to his brother Abraham Cooper, of the interest of the former in the land in controversy had been in reference to recent events, it may be the court below would have been right in declaring it insufficient, and directing a verdict for the plaintiffs. But time is an important factor in such transactions. Abraham Cooper and those claiming under him, had been in peaceful possession of the property about twenty-seven years before this suit was commenced. It would be unreasonable, after such a lapse of time, to require the same strictness of proof in establishing a parol sale as is requisite where the transaction is recent.

Richards *v.* Elwell, 12 Wright 361, was a case of a parol sale of lands, and the question of the effect of lapse of time upon the proof of the contract was fully considered. It was said, by AGNEW, J., "If the rule which requires the proof to bring the parties face to face, and to hear them make the bargain or repeat it, and to state all its terms with precision and satisfaction, is not to be relaxed after the lapse of forty years, when shall it be? After the lapse of fifty or sixty years it is not probable that any witness can be found above ground to state anything. Shall we wait for that period before we begin to relax? In the ordinary course of human affairs forty years are almost as likely to carry the proofs beyond the memory of living witnesses. It is contrary

[Irwin v. Cooper.]

to the presumptions raised in all other cases, presumptions which are used to cut off and destroy rights and titles founded upon records, deeds, wills and the most solemn rights of men. Based upon a time much shorter than in this case, we have the presumptions of a deed, grant, release, payment, survey, abandonment and the like. Indeed, all our Statutes of Limitation are founded on this principle, with this difference, that the presumption which was before inconclusive becomes absolute by the statute." To the same point are Read v. Goodyear, 17 S. & R. 350; Strimpfler v. Roberts, 6 Harris 298; Webb v. Dean, 9 Id. 29; Brock v. Savage, 7 Casey 410, and 10 Wright 83, cited in the above opinion. The same reasoning that was applied to a possession of forty years, may be invoked for a possession of twenty-seven years. It differs only in force. Presumptions of this character are the creatures of time. At first weak and inconclusive, they gather strength with each succeeding year, until at last they acquire a force upon which a title may be safely rested.

The farm for which this action of ejectment was brought at one time belonged to Samuel Cooper. He devised it to his three sons, William, John and Abraham, with a provision " that their mother have her living off the proceeds of the place as long as she remains in her widowhood." At that time the farm was of little value, a few acres only of it cleared, and the buildings miserable. It was not in a condition to support the widow in comfort. Such being the state of affairs, William, Abraham and their mother met at the house of James Lee, a neighbor, some time in 1851, to make some arrangement for the mother's support. James Lee was examined as a witness on behalf of the defendant. I give substantially his account of the interview : " To the best of my recollection it was in about 1851, I think Abram and William and the mother came to my house for to make a fix about the land—see which one would keep the mother and take the farm. * * Abram wanted William to take the mother, and he objected; he said he had a small family of his own ; he would rather not do it. * * After he objected and they talked a considerable Abram agreed to take the mother, and take the farm and keep her. * * I told them that they ought to have writings to this effect. They all three just spoke up and said it was not necessary; whatever they agreed upon would be just so. William just stated he could give them a quit-claim deed at any time. Abram agreed to take out timber on the place and help William build his house in Utica." The witness further said that Abraham took out timber and delivered it in Utica for William ; that shortly after this arrangement Abraham took possession of the farm and held it until he sold it to Irwin, the defendant ; that he built a new house, barn and blacksmith's shop on the farm, and that he supported his mother up to the period of her death. This witness was corroborated by Joshua F. Davis, another witness for the defendant, who testified to declara-

[Irwin *v.* Cooper.]

tions of William admitting a sale of his interest in the farm to Abraham. We thus have the parties brought face to face; a contract, and a subject-matter sufficiently described; a possession, evidently under the contract, for a period of twenty-seven years; a sufficient consideration fully paid, and valuable improvements made upon the property. While the terms of the arrangement, and the contract itself are not as clearly defined as could be desired, they are as much so as we have a right to expect from witnesses who are speaking of events of twenty-seven years ago. The outlines are there distinct enough, if some of the filling up has become dimmed with age, the defendant is entitled to the benefit of all the presumptions which lapse of time affords. There was certainly enough to carry the case to the jury, and it was error to withdraw it from their consideration.

The court below required the defendant to elect, whether he would defend under a parol purchase or the Statute of Limitations. By this means, the defendant was deprived of the latter defence. The reason given by the learned judge for this order was: "To defend under a purely equitable defence, such as a parol purchase is, as a defence inconsistent with a defence under the Statute of Limitations, which is purely legal." By the new rules in England, inconsistent pleas may be pleaded, if intended bona fide to support different substantial grounds of defence: Chitty 564. The same rule prevails in this state, and is constantly followed in practice. We see no sufficient reason why a party c'aiming to hold under a parol sale may not set up the statute to protect his title. It might be a great hardship if he could not do so. He may fail to make out his parol title by the death, or the failure of memory on the part of his witnesses. Nor is the statute so inconsistent with an equitable defence as to render it inadmissible. The Statute of Limitations is applied with the same effect in a court of equity as in a court of law: Hamilton *v.* Hamilton, 6 Harris 21. In relation to lapse of time, equity follows the analogy of the Statute of Limitations: Todd's Appeal, 12 Harris 429. The remarks of Mr. Justice Strong in Harris *v.* Richey, 6 P. F. Smith 401, are not in point. There the defendant held possession of the farm, claiming it not adversely, but under a parol contract of sale which he alleged was to be perfected by a deed. Such was not the case here. There was no agreement for a deed. When told by the witness Lee that "they ought to have writings to this effect," they all three spoke up and said it wasn't necessary; whatever they agreed upon, would be just so." The mere fact, that William stated that he *could* give them a quit-claim deed at any time, is not important. It was not asked for, and the transaction was completed without it. An adverse holding by Abraham after he went into possession, is not inconsistent with his parol title. It was error for the court to put the defendant to his election.

Judgment reversed, and a *venire facias de novo* awarded.