Reynolds et ux. v. Wilson et al.

*Leroy K. Donaldson* and *Alvah M. Shumaker,* for complainants.

*Caldwell & McFate,* for respondents.

BRAHAM, P. J., January 18, 1949.— . . . Plaintiffs own a home on the southeast corner of the airport which is owned by the City of New Castle and operated by defendants. It is across the road and only 375 feet

distant from the end of the northwest to southeast runway, one of two paved runways of the airport. It is plaintiffs' claim that in taking off from and in landing upon this runway defendants constantly pass so close to plaintiffs' house as to endanger their safety and to deprive them of the ordinary use of their home. There are some subordinate complaints such as the casting of dust upon plaintiffs' premises, the use of a loud public address system, the conduct of flights at night and on Sundays. Plaintiffs seek to enjoin defendants' operations over their home.

The questions for our determination are: First, whether and to what extent defendants have been flying close to plaintiffs' home; second, whether defendants have any right to do so and, third, whether plaintiffs have by their acquiescence forfeited any right to injunctive relief.

Concerning the reality of the situation about which plaintiffs complain there can be no doubt. Each of the defendants keeps a number of planes at the airport which are flown constantly over plaintiffs' land. The northwest to southeast air strip is 2,850 feet long, is the longest on the field and is used on more than one half of all flights. Plaintiffs are most explicit in their testimony about the alarming and disturbing nature of defendant's flights. Both Mr. Reynolds and Mrs. Reynolds testified to constant flying within a few feet of the house, to the fear engendered by the roar of the large motors, to the nervous strain, nausea, sleeplessness and ultimate loss of health caused by defendants' operations. Plaintiffs are corroborated by their son, Morton, and his wife, by Constable Mateja and by Dr. J. Luman Popp.

Plaintiffs are further corroborated by the photographs taken by Herman M. Reynolds. These pictures have their limitations. Mr. Reynolds took them him-

self with an ordinary camera. All he knew was to point the camera at the plane as it went by and pull the lever. His testimony with respect to some of the pictures is quite naive and inaccurate, leaving out entirely the factor of perspective and indicating as close above the house planes which were obviously far beyond it. Nevertheless there are many of these pictures which can only be explained by the presence of a large airplane in startling proximity to plaintiffs' dwelling. Such pictures are exhibits numbered 4, 7, 8, 12, 19, 27, 32, 37, 49, 57, 60, 70, 74, 118, 119, 120 and 122 and many others.

Defendants themselves testify to flying quite close to plaintiffs' house. Defendant Findley C. Wilson said his light training planes commonly fly about 80 feet above plaintiffs' house and his big planes 50 feet above. He admitted that some planes fly lower. Defendant Gargasz, while not so candid, indicated by his fixing of 10 feet above plaintiffs' house as a dangerous altitude, familiarity with low flying over plaintiffs' property.

The scientific facts about the airport and its glide path corroborate plaintiffs. All the evidence indicates the necessity for flying in a straight line for at least 400 feet upon leaving from or alighting upon the air strip. It is desirable for an aviator to use the full length of the available runway particularly in landing. These rules bring all flights properly made from or to this runway above or nearly above plaintiffs' house. The appropriate glide ratio according to Mr. Wilson and Thomas Womer of the State Department of Aeronautics is 20 to 1. According to the United States Department of Commerce it is 30 to 1. This requires 20 or 30 feet of lateral space for every foot of vertical space, a rule softened somewhat for our circumstances by the principle that a landing is proper

any place on the runway if 1,800 feet of runway remains. However, plaintiffs' house is 30 feet high. Thirty times 20 is 600, and 30 times 30 is 900; but it is only 375 feet from plaintiffs' house to the end of the runway. The 20-to-1 glide angle thus passes over plaintiffs' house at 18.7 feet, the 30-to-1 glide angle at 12.5 feet. Accordingly, no plane should properly land nearer than 225 feet, or 525 (depending upon which ratio is used) from the end of the runway. This principle, in direct conflict with the principle requiring all of the runway to be used, is bound to bring low flying over plaintiffs' house when planes are coming down.

The situation for planes which are going up is still more exacting. A plane can come down faster than it goes up. The evidence is not so clear on this point but again it is perfectly clear that any last-minute take-off is bound to bring low flying over plaintiffs' property.

Do defendants have the right to fly within 50 feet or less of plaintiffs' house as they admittedly do? The answer, if a take-off or landing were not involved, is emphatically no. Section 58 of the regulations of the Pennsylvania Aeronautics Commission, effective January 24, 1947, issued pursuant to The Aeronautical Code of May 25, 1933, P. L. 1001, sec. 201, as amended, 2 PS §1463, fixes 1,000 feet as the minimum height over towns and 500 feet as the minimum height over the open country.

On taking off or landing an aviator is obliged to touch the ground. Is he entitled to employ a runway to the edge of the airport property and then to use the air space above abutting property for his glide path? This raises the old controversy concerning the ownership of the air space above the land. At common law the owner of the surface owned downward to the center of the earth and upward to the heavens, a principle

expressed by the maxim "cujus est solum ejus est usque ad coelum". In this view any intrusion into the space above another's land was a trespass whether by the extension of an arm, the growth of a tree, the projection of the eves of a house, or the firing of a gun: Swetland et al. v. Curtiss Airports Corp. et al., 41 F. (2d) 929, 935. The development of aircraft and the growth of traffic by air have altered legal concepts until the Supreme Court of the United States said in United States v. Causby et ux., 328 U. S. 256, 90 L. Ed. 1206, 1210, that the old doctrine has no place in the modern world.

Section 401 of the Aeronautical Code of 1933, P. L. 1001, 2 PS §1467, provides:

"The ownership of the space over and above the lands and waters of this Commonwealth is declared to be vested in the owner of the surface beneath, but such ownership extends only so far as is necessary to the enjoyment of the use of the surface without interference, and is subject to the right of passage or flight of aircraft. Flight through the space over and above land or water, at a sufficient height, and without interference to the enjoyment and use of the land or water beneath, is not an actionable wrong, unless said flight results in actual damage to the land or water, or property thereon or therein, or use of the land or water beneath."

Section 402, 2 PS §1468 provides:

"Flight in aircraft over the lands and waters of this Commonwealth is lawful, unless at such low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner, or unless so conducted as to be dangerous or damaging to persons or property lawfully on the land or water beneath. The landing of an aircraft on the lands or waters of another without his

consent is unlawful, except in the case of a forced or emergency landing. For damage caused by a forced or emergency landing, the owner, lessee, and operator of the aircraft shall be liable, as provided in section four hundred three."

Our findings indicate clearly our conviction that defendants have been flying so low over plaintiffs' lands as to interfere with the use and enjoyment of the land beneath and to be dangerous and damaging to persons lawfully thereon. Thus defendants are in violation of the statutes unless there is something about the necessity for a glide path which takes an appropriation of air space for it out of the operation of ordinary law.

Why should a municipality which owns an airport, or its lessee, be permitted to appropriate a glide path over the lands of the adjoining owner? If the municipal airport could not be reached by land without passing over the property of an adjoining owner no one would contend for a right of passage without compensation. The flight path within a few feet of plaintiffs' dwelling appropriates something just as real and probably of more value than a right of way over the surface. The City of New Castle has the power to acquire land for a right of way over the surface through the power of eminent domain. It has the same power to condemn a right of way through the air. Why should it not do so?

Perhaps the leading case on this question is United States v. Causby et al., 328 U. S. 256, 90 L. Ed. 1206. There plaintiffs' barn was 2,220 feet from the nearest end of defendants' runway. The 30-to-1 safe glide angle approved by the Civil Aeronautics Authority passed over plaintiffs' property at 67 feet above plaintiffs' house, 63 feet above the barn and 18 feet above the highest tree. The runway was used by bombers,

transports and fighters about four percent of the time in taking off and seven percent in landing. Plaintiffs were disturbed and alarmed by the noise, lights and apparent danger of defendants' operations. They were unable to continue to raise chickens. It was held that plaintiffs were entitled to recover from the United States for the appropriation of an easement over their property.

There are many persuasive precedents on the point, indicating how resolutely the law continues to safeguard the interests of the owner of the surface notwithstanding the great public interest in air transportation. In Delta Air Corp. et al., Kersey v. City of Atlanta, 193 Ga. 862, 20 S. E. (2d) 245, defendant's runway was within 300 feet of plaintiff's house and planes therefrom flew over plaintiff's house at heights of from 25 to 50 feet. This was held to constitute a nuisance and was enjoined. In Vanderslice et al. v. Shawn et al., 27 A. (2d) 87 (Del. Ch.), flights so low as to interfere with existing uses were held to be trespass whether in taking off or landing in full flight. An injunction was granted. In Burnham et al. v. Beverly Airways, 311 Mass. 628, 42 N. E. (2d) 575, it was held that flights of aircraft below the reasonable heights fixed by the Aeronautics Commission constituted a trespass justifying an injunction. In Neiswonger v. Goodyear Tire & Rubber Co. et al., 35 F. (2d) 761 (Ohio), an allegation of the flight of a dirigible below the 500-feet limit fixed by commission action was held on demurrer to constitute a good averment of trespass. A similar ruling as to aircraft is found in Thrasher v. City of Atlanta et al., 178 Ga. 514, 173 S. E. 817. In Swetland v. Curtiss Airports Corp. et al., 41 F. (2d) 929 (Ohio), the imposition of a 500-feet minimum flight level was sustained as a valid exercise of the police power and the probability of flights at

less than 500 feet even in taking off and landing was held to amount to a nuisance.

In Pennsylvania the Supreme Court recently considered the right of a surface owner to be protected from flights of airplanes in Crew et al. v. Gallagher et al., 358 Pa. 541. There plaintiffs sought to enjoin the building of an airport in an agricultural district. It was held that an airport is not of itself a nuisance and that under the peculiar circumstances of the case plaintiffs were not entitled to relief but the court by Mr. Justice Drew said in closing:

"After the establishment of a regular flight traffic pattern, if airplanes fly very close to plaintiffs' buildings, or in any other way cause real damage to plaintiffs' property, adequate relief in equity will be available to them."

In Dlugas et ux. v. United Air Lines, etc., et al., 53 D. & C. 402, the Common Pleas Court of Lehigh County enjoined the operation of planes when taking off and landing at a height of less than 100 feet.

It may be observed in concluding this feature of the case that A. L. I. Restatement of the Law of Torts, §194, considers flights of aircraft over the lands of another to be privileged only if at a height so as not to interfere unreasonably with the possessor's enjoyment of the surface and the air space above it and if in conformity with regulations of the aeronautical authorities.

The final subject for our consideration is plaintiffs' alleged laches. Have they by failure to press their claim forfeited their right? Certainly not as to the situation when plaintiffs built their house. They bought their land in 1927; the first use of defendants' lands as an airport was not until 1928 and then the first use was abandoned and in any event did not affect plaintiffs' property. The claim of laches can be sustained if at all, only because of the building of the

hard surface runways in 1939 without plaintiffs' objection. Up to that time there was no runway pointed at plaintiffs' property and nothing to affect their property more than any other in the neighborhood. Nor is the failure to object when the runway was built fatal. Plaintiffs are not aviators and in justice can be held only to the foresight of the average layman. They did not realize the enormous growth in air traffic which was to come, the increase in the size of planes, the use of the airport day and night. Certainly the experts who designed this airport did not have much more ability to foresee the future than did plaintiffs, because the northwest to southeast runway now violates the accepted glide ratio of both the State and the Federal Governments. If they did not anticipate the consequences how can we hold plaintiffs guilty of laches for failure to do so?

There are two bases for the rule denying relief in equity because of delay: first, doubt whether plaintiffs have been hurt as much as they claim; second, defendant may have been encouraged to change his position because of plaintiffs' inaction. Of the first type is the case of Harris et al. v. Susquehanna Collieries Co., 304 Pa. 550 where plaintiff allowed dust from defendant's culm pile to blow over on his greenhouse for eight years before asking relief. Of the second class are Soifer et ux. v. Stein et ux., 101 Pa. Superior Ct. 135, where plaintiff allowed defendant to build a garage partly on the plaintiff's land and then sought to compel its removal, or Daflinger v. The Pittsburgh & Allegheny Telephone Co. and The City of Allegheny, 48 Pitts. L. J. 37, where plaintiff stood by and allowed telephone conduits to be installed in the street before his house without protest. In these cases, cited by defendant, relief was denied as also in Stewart Wire Co. v. Lehigh Coal & Navigation Co., 203

Pa. 474, where plaintiff was not really hurt and defendant was improving the situation.

In the case at bar plaintiffs' delay does not indicate they were not hurt. The true servitude imposed upon their lands did not begin to appear until 1945 after the war was over. Before the war there was not much flying, during the war it was with smaller planes and under circumstances where patriotism required forbearance; not until the larger planes of the new era began coming over day and night did plaintiffs realize the full extent of their predicament.

Equity is not bound by the statute of limitations but proceeds by analogy to it: Irwin v. Cooper et al., 92 Pa. 298, 304; Bell, Sec. of Banking, v. Brady et al., 346 Pa. 666, 668. The Act of March 27, 1713, 1 Sm. L. 76, sec. 1, 12 PS §31, bars actions of quare clausum fregit in six years. Each of defendants' flights over plaintiffs' property is a trespass of this character. Suit was brought September 17, 1947. Applying the law therefore nothing after September 17, 1941, was barred.

Each flight constituted a separate trespass and equity is the special forum for injunctive relief against continuing trespasses or nuisances: Gray v. Phila. & Reading Coal & Iron Co. et al., 286 Pa. 11, 16; Walters v. McElroy et al., 151 Pa. 549; Annotation, 32 A. L. R. 463, 472. Defendants' trespasses cannot be under the protection of right because, although the continued hostile use of this glide path by defendants might ripen into a presumptive right, the 21 years necessary to this result under the Act of March 26, 1785, 2 Sm. L. 299, sec. 2, 12 PS §72, have not yet passed.

Since defendants have not acquired title to the glide path by prescription, since there are many of a series of continuing trespasses as to which the statute of

limitations has not run, and since we find no delay on the part of plaintiffs to assert their known rights which has been harmful to defendants, this is an appropriate case for relief by injunction.

The problem as to what relief to grant has caused great concern. The court is mindful of the public nature of the airport and desires to hamper its operations as little as possible. To impose the requirement of a 500-feet minimum height above plaintiffs' property would mean almost total abandonment of the northwest to southeast runway. But the regulations fixing this minimum height were not effective until January 24, 1947. It seems unjust under the circumstances to impose this rigid rule upon an airport built to conform to the standards of an earlier day. It appears from the evidence that so long as defendants kept their planes at a height of 100 feet plaintiffs were not much disturbed. Accordingly, following the lead of Judge Henninger in the case of Dlugas et ux. v. United Air Lines, etc., et al., 53 D. & C. 402, 100 feet is fixed as the minimum distance above plaintiffs' property in which defendants may fly.

### Conclusions of Law

1. Plaintiffs have shown defendants to be guilty of a series of continuing trespasses in flying airplanes within 50 feet of plaintiffs' home.

2. Plaintiffs have not been guilty of laches in asserting their claim.

3. The case is an appropriate one for injunctive relief.

4. Under all the circumstances it is equitable to require defendants to fly at a minimum of 100 feet above plaintiffs' home.

### Decree Nisi

Now, January 18, 1949, after full consideration of this case, defendants, Findley C. Wilson, trading as

Wilson Aviation Company, and Penn Aero Service, Inc., and each of them by themselves, their servants, agents and employes, are enjoined from flying above the property of plaintiffs described in paragraph 1 of the bill of complaint at a height of less than 130 feet above the ground level when taking off from or landing on the air strip and from flying at less than 500 feet above plaintiffs' property in other flights.

This decree shall become absolute unless exceptions are filed to it within 10 days from notice hereof.