**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LINDA BOISSON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SHIRLEY LEVAN | : | |
| | : | |
| Appellant | : | No. 1024 MDA 2025 |

Appeal from the Judgment Entered October 9, 2025
In the Court of Common Pleas of Berks County Civil Division at No(s):
23-11547

BEFORE:  BOWES, J., DUBOW, J., and NEUMAN, J.

MEMORANDUM BY NEUMAN, J.:                    **FILED: JUNE 10, 2026**

Appellant, Shirley Levan, appeals from the judgment entered in favor of
Appellee, Linda Boisson, after a bench trial in this property dispute.  We affirm
but order the trial court to correct a typographical error in the judgment.

## Background

On July 17, 2023, Ms. Boisson filed a complaint against Appellant,
bringing claims for ejectment and *mesne* profits, relating to real property she
asserted to own located on Limekiln Road in Amity Township, Berks County,
Pennsylvania, bearing Property Identification No. 24534512958377
("Property").  Appellant resides in a mobile home situated at the residential
mailing address of 24 Buttercup Lane, which is part of the Property.  Appellant,
however, contends she owns the land on which her mobile home is located
through a written agreement made between the parties' fathers decades ago.
Consequently, Appellant filed counterclaims against Ms. Boisson for quiet title

pursuant to Pa.R.Civ.P. 1061(b)(3), and for equitable relief pursuant to the doctrine of consentable lines.[1]

A bench trial took place on September 5, 2024. Our review of the trial court's findings conveys the following. William Boisson is the deceased father of Ms. Boisson, and Charles Levan is the deceased father of Appellant. Decision & Verdict, 1/6/25, at ¶¶ 2, 3. In or about July 1957, Bill's Mobile Homes issued a document on its letterhead that was signed by William Boisson and Charles Levan (hereinafter "Bill's Mobile Home Document"). **Id.** at ¶ 1. The Bill's Mobile Home Document states, in relevant part:

> BEL AIR ESTATES
> R.D 2#
> BIRDSBORO, PA
>
> LOT 9# BLOCK 2#
>
> Lot price reduced on lot depending upon completion of the Mobile Home Contract purchased from us.
>
> ```
> $ 1500.00 - lot and improvements
>    550.00 - carrying charges
> $ 2050.00 -
>     25.00   down payment
> _____
> $ 2025.00 - Total amount
> ```
>
> Balance at the rate of Twenty Five Dollars and no cents $25.00 on the first day of each and every month starting July 1,1957 Sale subject to restrictions as stated and agreeded upon by purchaser at time of sale,to be written into a lease agreement drawn up by our lawyer,AND upon which this agreement will be come a part of. *total of 81 monthly payments*

---

[1] **See** Pa.R.Civ.P. 1061(b)(3) (stating an action to quiet title may be brought "to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land").

Appellant's Exhibit 1.

Appellant claims the Bill's Mobile Home Document constituted an agreement and a bill of sale for the at-issue land, but William Boisson did not transfer title to any real estate in question in this case to Charles Levan. **See** Decision & Verdict at ¶¶ 17, 27.[2] Yet, after the preparation of the Bill's Mobile Home Document, Charles Levan began occupying real estate located at 24 Buttercup Lane owned by William Boisson with his consent. **Id.** at ¶¶ 18, 22. After Charles Levan's death, Appellant continued occupying the real estate owned by William Boisson. **Id.** at ¶ 19.[3]

By deed dated December 31, 2019, Ms. Boisson became owner of the Property. **Id.** at ¶ 20.[4] Appellant has occupied a mobile home that is placed on the Property owned by Ms. Boisson for approximately 47 years. **Id.** at ¶ 23. Although Appellant pays taxes on the mobile home, she does not pay taxes on the real estate where the mobile home is situated. **Id.** at ¶ 24. Appellant is not the titled owner of the real estate, nor does she have a lease for the land, where the mobile home is situated. **Id.** at ¶¶ 25-26. However,

---

[2] **See also** N.T., 9/5/24, at 74 (Appellant's saying the Bill's Mobile Home Document was "an agreement and a bill of sale"); **id.** at 75-76 (Appellant's alleging "[m]y dad bought the land, bought a trailer off of Bill's Mobile Homes, put it there, lived there, paid the thing off in 81 months[,] which would be 1964[,] and never got the [d]eed").

[3] Appellant testified Charles Levan died in 1972. N.T. at 92. Ms. Boisson stated William Boisson died in 1992. **Id.** at 9.

[4] Ms. Boisson indicated the Property is a mobile home community. **See** N.T. at 8-10, 21.

Appellant has repeatedly made efforts over the years to obtain title to the land where the mobile home is situated. *Id.* at ¶ 28. On or about July 11, 1995, Appellant wrote a letter addressed to "To Whom It May Concern," stating:

> I am writing in reference to setting up an appointment to talk about getting the deed to my property. I have been to the office and dropped off a Quit Claim Deed. It is a legal and binding paper that will save the cost of lawyers for both of us. I have called your office twice to set up an appointment also. I have heard nothing. I realize this is a busy time for you, but this matter has been going on for 38 years. Can't we get together and settle it once and for all. I thank you very much.

*Id.* at ¶ 29 (citing Appellant's Exhibit 4). In August 1995, Appellant's counsel sent a letter to Ms. Boisson's mother's counsel, seeking to enforce an agreement of sale Appellant contended had resulted in the transfer of the real estate to Appellant. *Id.* at ¶ 30.[5]

> On June 3, 2022, Ms. Boisson sent a letter to Appellant, stating:
>
> The relationship between your parents and my parents has ended. I would like to begin with a new meeting of the minds between us. As the property owner I am willing to accept you as a resident.
>
> We can begin this new relationship with the understanding that the first payment of lot rent of $495.00 will begin on July 3, 2022. The lot rent will be paid on the first of every month. A late fee will be assessed if not received by the fifth of the current month due.
>
> I want to be totally clear with you. The lot fee must be paid as it is used to pay for all the expenses of maintenance, water, sewer, taxes, etc. Increases in those costs may increase the lot rent fee.
>
> I will send you a rental and lease agreement for filing so that we have everything in place as it should be.

---

[5] The trial court says this letter was sent to Ms. Boisson's counsel; however, we believe this was a misstatement as the record indicates it was sent to Ms. Boisson's mother's counsel. *See* Appellant's Exhibit 14; N.T. at 84-85.

*Id.* at ¶ 31 (citing Ms. Boisson's Exhibit 5). Appellant did not pay the rent requested in the letter, nor did she vacate the real estate. *Id.* at ¶¶ 32-33.

Based on the above-stated findings, the trial court issued a decision in favor of Ms. Boisson on her claims and Appellant's counterclaims on January 6, 2025.[6] Regarding Ms. Boisson's claim for *mesne* profits, the trial court awarded Ms. Boisson $14,850.00. In reaching its decision, the trial court pointed out ambiguities in the Bill's Mobile Home Document and noted that neither party had firsthand knowledge of the document. *See* Decision & Verdict at 1-3, 6.

On January 10, 2025, Appellant filed a timely post-trial motion and memorandum of law in support. In response to Appellant's post-trial motion, on January 15, 2025, the trial court issued a scheduling order, in which it directed: oral argument shall take place on February 18, 2025; Appellant shall file an argument brief if she has not already done so on or before January 28, 2025; and Ms. Boisson shall file an argument brief on or before February 11, 2025. On January 21, 2025, Ms. Boisson filed an answer to Appellant's post-trial motion as well as her own post-trial motion, along with a memorandum of law in support. On January 28, 2025, seemingly pursuant to the trial court's January 15, 2025 order and despite having already filed a memorandum of

---

[6] In the trial court's verdict, which follows its decision in the record, it referred to the Property's identification number as "245**2**4512958377." Decision & Verdict at 1 (emphasis added). Based on our review of the record, we believe it should be 245**3**4512958377. *See* Ms. Boisson's Exhibits 1, 2 & 4.

law in support, Appellant filed another memorandum of law in support of her post-trial motion.

On January 29, 2025, while the parties' post-trial motions remained outstanding, Appellant filed a notice of appeal, which was docketed at 142 MDA 2025. The trial court stayed the case pending Appellant's appeal. On March 14, 2025, this Court quashed Appellant's appeal without prejudice for Appellant to exercise her appellate rights after the trial court disposed of the parties' post-trial motions and judgment was entered.[7]

After the trial court lifted the stay of the proceedings, it issued a new scheduling order and the parties submitted additional memoranda of law in opposition to each other's post-trial motions. On July 2, 2025, the trial court entered separate orders denying each party's post-trial motion. On July 29, 2025, Appellant filed a notice of appeal, even though judgment had not yet been entered. The trial court instructed Appellant to file a concise statement pursuant to Pa.R.A.P. 1925(b), and she timely complied. The trial court thereafter issued a Rule 1925(a) opinion.

On October 3, 2025, this Court issued a rule to show cause, directing Appellant to *praecipe* the trial court prothonotary to enter judgment on the

---

[7] ***See Melani v. Northwest Engineering, Inc.***, 909 A.2d 404, 406 (Pa. Super. 2006) ("The entry of an appropriate judgment is a prerequisite to this Court's exercise of jurisdiction and an appeal filed while a post-trial motion is pending before the trial court will be considered premature.") (cleaned up).

decision of the trial court.[8]  Judgment was subsequently entered on October 9, 2025.[9]  The docket shows the judgment contains the incorrect identification number for the Property.  **See** footnote 6, ***supra***.

## Issues

On appeal, Appellant raises the following issues for our review:

[1]. Did the trial court commit a reversible error of law by the failure to enforce the express terms, and intention, of the 1957 written agreement between Charles R. Levan and William J. Boisson, Sr., d/b/a Bill's Mobile Homes?

[2]. Did the trial court commit a reversible error of law by the failure to confirm what constituted the border of Lot #9, Block #2 in the 1957 written agreement, by way of the "Doctrine of Consentable Line?"

[3]. Did the trial court commit a reversible error by improperly awarding damages to [Ms. Boisson] on her Count II "*Mense* [*sic*] Profits" claim, where the damages testimony presented was speculative and the trial court's award was not based upon competent evidence?

Appellant's Brief at iii-iv (internal citations omitted; italics added).

## Analysis

### Rule 1925(b) Statement

Before reaching Appellant's issues, we address her repetitive and lengthy Rule 1925(b) statement.  "[A] Rule 1925(b) statement is a crucial

---

[8] ***See Prime Media Assocs. v. Valley Forge Ins. Co.***, 970 A.2d 1149, 1154 n.6 (Pa. Super. 2006) (observing appeals from the denial of post-trial motions are interlocutory and generally not appealable; instead, the subsequent judgment is appealable and "[a] final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction") (cleaned up).

[9] Ms. Boisson did not appeal.

component of the appellate process because it allows the trial court to identify and focus on those issues the party plans to raise on appeal." ***Commonwealth v. Vurimindi***, 200 A.3d 1031, 1038 (Pa. Super. 2018) (citation omitted). It is well-established the filing of a timely Rule 1925(b) statement does not automatically equate with issue preservation. ***Id.*** "[T]he [Rule] 1925(b) statement must be sufficiently 'concise' and 'coherent' such that the trial court judge may be able to identify the issues to be raised on appeal, and the circumstances must not suggest the existence of bad faith." ***Id.*** The concise statement "shall set forth only those errors that the appellant intends to assert" and "shall concisely identify each error … with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(i)-(ii). "Each error identified in the Statement will be deemed to include every subsidiary issue that was raised in the trial court…." Pa.R.A.P. 1925(b)(4)(v). Further, the concise statement "should not be redundant or provide lengthy explanations as to any error. Where non-redundant, non-frivolous issues are set forth in an appropriately concise manner, the number of errors raised will not alone be grounds for finding waiver." Pa.R.A.P. 1925(b)(4)(iv). "[I]ssues not raised in accordance with the provisions of Rule 1925(b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii).

Here, Appellant's Rule 1925(b) statement is 13 pages long. ***See*** Concise Statement, 8/18/25. The first two pages consist of an apparent introductory section, in which Appellant identified the trial court's "lynchpin" error, clarified her counterclaims, stated the trial court improperly rewarded Ms. Boisson for

discarding business records, and alleged the trial court should not have awarded damages to Ms. Boisson. *Id.* at 1-2. Although this case involves only two parties and is not overly complex, the remaining pages list 26 alleged errors made by the trial court. *Id.* at 3-13.[10] Many of these alleged errors are redundant and duplicative. *See id.*

We admonish Appellant for not concisely stating her errors. Nevertheless, the trial court was able to identify the main issues Appellant raises on appeal and has not suggested Appellant filed her Rule 1925(b) statement in bad faith.[11] Accordingly, we decline to find waiver of Appellant's issues based on her unnecessarily lengthy Rule 1925(b) statement.

### Issue 1: Bill's Mobile Home Document

In Appellant's first issue, she argues the trial court "committed a reversible error of law" by failing "to enforce the express terms and intention

---

[10] *Cf. Eiser v. Brown & Williamson Tobacco Corp.*, 938 A.2d 417, 427 (Pa. 2007) (declining to find waiver because of the number of issues raised in the concise statement where the appellants "brought forth a complicated multi-count lawsuit with numerous defendants resulting in many trial court rulings").

[11] *Cf. Vurimindi,* 200 A.3d at 1042 (finding waiver where Rule 1925(b) statement was 53 pages and contained a "defamatory rant against everything and everyone involved in [the] case[, which] shows complete defiance toward the purpose of appellate review"); *Jiricko v. Geico Ins. Co.*, 947 A.2d 206, 213 (Pa. Super. 2008) (finding waiver where the appellant's concise statement was five pages long and presented "no legitimate appellate issue"); *Kanter v. Epstein*, 866 A.2d 394, 402 (Pa. Super. 2004) (finding waiver where the defendants raised a total of 104 issues in their Rule 1925(b) statements and "attempted to overwhelm the trial court by filing Rule 1925(b) [s]tatements that contained a multitude of issues that the [d]efendants did not intend to raise and/or could not raise before this Court").

of" the Bill's Mobile Home Document. ***See*** Appellant's Brief at 11 (emphasis and unnecessary capitalization omitted). She contends it is an undisputed fact both William Boisson and Charles Levan signed the agreement, and "the express words[] and intention[] of the … written agreement was the conveyance of real estate, Lot 9, Block 2, with the 'material terms' of an … 81 … month installment sale, with … $25.00 … payable per month, along with a mobile home purchase." ***Id.*** at 12 (citations omitted). Appellant claims none of the ambiguities perceived by the trial court with respect to the Bill's Mobile Home Document "alter the undisputed, express terms of the written agreement…." ***Id.*** (citations omitted). Further, Appellant insists she confirmed at trial her father performed the material terms of the agreement. ***Id.*** at 14. In addition, she says the conduct of the parties' fathers — including payments made by Appellant's father and her family's having sole possession of the at-issue real estate from 1964 to 2019 — corroborated it was their intention to enter the installment sale contract. ***Id.*** at 15. She also complains the trial court did not consider checks her father wrote supporting the existence of a written installment sale contract, family photographs confirming the existence of the mobile home identified in the Bill's Mobile Home Document, or her assertion that she later purchased a replacement mobile home from a company formerly known as Bill's Mobile Home's that was set up in the same location where the original mobile home was placed. ***See id.*** at 17-20. She consequently asks this Court to reverse the trial court's decision and remand "for further proceedings to now enforce the [Bill's Mobile Home

- 10 -

Document] as a completed installment contract, or in the alternative grant a new trial." *Id.* at 20-21 (citations omitted).

Initially, it is unclear from Appellant's argument whether — in addition to Appellant's claim the trial court erred by not enforcing the purportedly unambiguous Bill's Mobile Home Document — she also seeks a new trial based on the weight of the evidence.[12]  We believe Appellant intends to raise only the former claim, as she discusses no law relating to a new trial based on the weight of the evidence in her brief; did not clearly raise a claim the trial court erred in denying her a new trial based on the weight of the evidence in her Rule 1925(b) statement, which caused the trial court to not specifically

_____

[12] A new trial is the remedy where the verdict is alleged to be against the weight of the evidence.  *Lanning v. West*, 803 A.2d 753, 766 (Pa. Super. 2002).  "A true weight-of-the-evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed."  *Commonwealth v. Lewis*, 911 A.2d 558, 566 (Pa. Super. 2006) (citation omitted).  "The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court[,]" and "the function of an appellate court … is to review the trial court's exercise of discretion based upon a review of the record…."  *Heffelfinger v. Shen*, 342 A.3d 711, 725 (Pa. Super. 2025) (citation omitted).  "[I]n reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is so contrary to the evidence as to shock one's sense of justice."  *Id.*  "A verdict is against the weight of the evidence where certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."  *Id.*  Further, "although weight claims have been considered in non-jury cases, there is a logical inconsistency in asking a trial judge to conclude that his non-jury decision shocked his own conscience."  *See Lewis v. UPMC Health Plan*, No. 1089 WDA 2022, unpublished memorandum at 7-8 (Pa. Super. filed Feb. 23, 2024); *see also* Pa.R.A.P. 126(b) (providing unpublished non-precedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

address that issue in its Rule 1925(a) opinion; and did not discernably ask for a new trial based on the weight of the evidence in her post-trial motion. We therefore do not address any weight claim and tailor our review accordingly.

With respect to Appellant's claim the trial court erred by not enforcing the Bill's Mobile Home Document, we recognize:

> Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the fact[-]finder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

***Wolf v. Santiago***, 230 A.3d 394, 399-400 (Pa. Super. 2020) (citations omitted).

Additionally, we observe:

> In cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

***Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004) (cleaned up).

Here, the trial court explained:

The fundamental fallacy in all … Appellant's arguments is that she contends … because [the] Bill's Mobile Home Document is an express contract[,] it is dispositive.  In this case, however, the [c]ourt found [the] Bill's Mobile Home Document was ambiguous.[3]  This ambiguity was exacerbated by the fact that the parties to the Bill's Mobile Home Document have since passed away.  The parties then tried to rely upon testimony that was hearsay and speculative as to their parents' intent.  The [c]ourt was unable to give substantial weight to this testimony.

> [3] There is even ambiguity in … Appellant's arguments through the use of the phrase "express contract."  An "express contract[]" is deemed to be formed when the terms of an agreement are declared by the parties either orally or in writing.  ***See Braun v. Wal-Mart Stores, Inc.***, 24 A.3d 875, 942 (Pa. Super. 2011).  Regardless of whether a contract is an "express contract," it may remain susceptible to ambiguity.

There were a number of ambiguities in the document and the surrounding evidence that were not resolved to the satisfaction of this [c]ourt by the evidence presented.  These included:

- The Bill's Mobile Home Document makes reference to "Lot #9 Block #2."  The phrase "Lot #9 Block #2," however, did not contain a metes and bounds description and is not described in the Bill's Mobile Home Document such that it can be identified with particularity or be located.

- The Bill's Mobile Home Document states, "Lot price reduced on lot depending upon completion of the Mobile Home Contract purchased from us."  Neither party produced credible evidence as to whether the "Mobile Home Contract" referred to in the Bill's Mobile Home Document was ever executed, nor did they produce credible evidence of the intended relationship between the "Mobile Home Contract" and the Bill's Mobile Home Document.

- The Bill's Mobile Home Document also states, "Balance at the rate of Twenty Five Dollars and no cents $25.00 on the first day of each and every month starting July 1, 1957 [*sic*]

- 13 -

Sale subject to the restrictions as stated and agreed [*sic*] upon by purchaser at time of sale, to be written into a lease agreement drawn up by our lawyer, AND upon which this agreement will be come [*sic*] a part of." The lease agreement was not produced.

- The Bill's Mobile Home Document closes with a handwritten sentence stating, "total of 81 monthly payments." The phrase "total of 81 monthly payments" does not specify exactly how those … 81 … payments are to be applied.

- The Bill's Mobile Home Document does not identify the "purchaser." The Bill's Mobile Home Document does not identify who the word "our" refers to in the phrase "our lawyer."

- The Bill's Mobile Home Document does not identify a title of William Boisson or otherwise set forth his relationship with the Bill's Mobile Home Document.

- The Bill's Mobile Home Document does not identify a title for Charles Levan or otherwise set forth his relationship with the Bill's Mobile Home Document.

- Neither party knows what the phrase, "restrictions as stated and agreed [*sic*] upon by purchaser at time of sale," refers to, what restrictions may have been imposed, and whether they were complied with or otherwise performed.

- Neither party knows whether the lease agreement referred to in the Bill's Mobile Home Document was ever executed, nor do they know the intended relationship between the lease agreement and the Bill's Mobile Home Document.

The only facts … the [c]ourt was able to reasonably conclude were established included the fact that William Boisson did not transfer title to any real estate at issue in this case to Charles Levan. Following the preparation of the Bill's Mobile Home Document, however, Charles Levan began occupying real estate owned by William Boisson with the consent of William Boisson. Neither party convincingly established why title was not exchanged.

To state it as plainly as possible, the evidence simply did not carry enough weight to persuade this [c]ourt that it should enter an order transferring a piece of real estate currently titled in the name of one person to another person. Inasmuch as this was a

- 14 -

decision that relied extensively upon the credibility and weight of the evidence presented, it should not be disturbed on appeal.

Rule 1925(a) Opinion, 9/19/25, at 12-14.

We see no error in the trial court's finding of ambiguity in the Bill's Mobile Home Document and agree with the uncertainties the trial court expressed about the document. As such, we reject Appellant's argument the trial court erred in not enforcing the Bill's Mobile Home Document. Moreover, insofar as Appellant argues other evidence shows the parties' fathers' intent to enter an installment sale contract, the trial court did not find that evidence convincing to prove such. **See Wolf**, **supra** ("We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial."). Thus, no relief is due on Appellant's first issue.

**Issue 2: Doctrine of Consentable Line**

In Appellant's second issue, she confusingly argues the trial court committed a reversible error of law by failing to confirm what constituted the boundary line of Lot #9, Block #2 in the Bill's Mobile Home Document by way of the doctrine of consentable line. Appellant's Brief at 22 (unnecessary capitalization and emphasis omitted). She insists the Bill's Mobile Home Document is an enforceable installment sale contract, **id.** at 23, and says it "sets forth the real estate conveyance from which her 'doctrine of consentable line' claim arises." **Id.** at 25 (citations omitted); **see also** Appellant's Reply Brief at 11 (stating the purpose of the doctrine of consentable line "is to

equitably settle long-recognized boundaries, and [Appellant's] use of the doctrine meets the parameters of that purpose, with the [Bill's Mobile Home Document] being the applicable document conveying title") (citations omitted). She seems to argue the boundary line of Lot #9, Block #2 referenced in the Bill's Mobile Home Document is where the mobile home purchased by Charles Levan was set up, and that her claim to this property occurred for at least 21 years. **See** Appellant's Brief at 24-27. Appellant asks us to reverse the trial court's judgment "and remand the case to the trial court for further proceedings to enforce the [Bill's Mobile Home Document] as a completed installment sale contract, with the boundaries established by the doctrine of consentable line, or in the alternative grant a new trial." **Id.** at 27-28 (cleaned up).

"The doctrine of consentable line is a rule of repose for the purpose of quieting title and discouraging confusing and vexatious litigation." **Plauchak v. Boling**, 653 A.2d 671, 675 (Pa. Super. 1995) (citations omitted). "The doctrine of consentable lines has emerged as a separate and distinct theory from that of traditional adverse possession. There are actually two ways in which one may prove a consentable line: by dispute and compromise, or by recognition and acquiescence." **Niles v. Fall Creek Hunting Club, Inc.**, 545 A.2d 926, 930 (Pa. Super. 1988) (*en banc*). Here, Appellant ostensibly endeavors to prove a consentable line by recognition and acquiescence. **See** Appellant's Brief at 25-26. We focus our review accordingly.

This Court has explained:

The requirements for establishing a binding consentable line by recognition and acquiescence are: (1) a finding that each party has claimed the land on his side of the line as his own; and (2) a finding that this occupation has occurred for the statutory period of twenty-one years. In such a situation, the parties need not have specifically consented to the location of the line. It must nevertheless appear that for the requisite twenty-one years a line was recognized and acquiesced in as a boundary **by adjoining landowners**.

**Plauchak**, 653 A.2d at 675-76 (cleaned up; emphasis added).

Here, while not entirely clear, Appellant's consentable line argument seems to be based on the premise the Bill's Mobile Home Document is enforceable and she is an adjoining landowner. However, we have already rejected her claim the trial court erred in not enforcing the Bill's Mobile Home Document. **See** Issue 1, **supra**. Consequently, we fail to see how the doctrine of consentable line applies here, and this issue warrants no relief.

### Issue 3: *Mesne* Profits

In Appellant's third and final issue, she claims the trial court erred by "improperly awarding damages where the testimony presented concerning the *mense* [*sic*] profits claim was speculative and the claim was not proven." Appellant's Brief at 28 (cleaned up; italics added). Appellant advances that competent evidence did not support the trial court's $14,850.00 *mesne* profits award, where Ms. Boisson's testimony regarding the lot rental rate was speculative and "the lot rental basis question[,set forth *infra*,] was withdrawn and not re-asked, and therefore no intelligent basis for the rate is stated within the record." **Id.** at 29 (citations omitted). Further, Appellant complains testimony Ms. Boisson gave regarding sewer charges and real estate taxes did

not identify the costs solely attributable to the at-issue property used by Appellant, and insists water service could not form any part of Ms. Boisson's damages claim, as 24 Buttercup Lane's water service is by well pump. *Id.* Appellant asks us to "remand the case to the [t]rial [c]ourt for further proceedings to strike the award of $14,850.00…, or in the alternative grant a new trial." *Id.* at 30.

Again, because Appellant asks for a new trial in the alternative, it is unclear if Appellant — in addition to contesting whether Ms. Boisson's *mesne* profits claim was proven — also challenges the weight of the evidence. We construe Appellant's argument as only challenging the sufficiency of the evidence, as we repeat she cites no legal authority pertaining to the award of a new trial based on the weight of the evidence in her brief; did not plainly raise a claim of error pertaining to not receiving a new trial based on the weight of the evidence in her Rule 1925(b) statement, resulting in the trial court's not specifically addressing that issue in its Rule 1925(a) opinion; and did not clearly seek a new trial based on the weight of the evidence in her post-trial motion.[13, 14]

---

[13] *Lewis* provides a helpful discussion of the differences between sufficiency and weight-of-the-evidence claims. *See Lewis*, No. 1089 WDA 2022, unpublished memorandum at 6-8.

[14] Appellant's challenge to the sufficiency of the evidence amounted to a request for judgment notwithstanding the verdict ("JNOV") below on Ms. Boisson's *mesne* profits claim. *See Lanning*, 803 A.2d at 759 ("Where the evidence is insufficient to sustain the verdict or decision of the trial court, the

*(Footnote Continued Next Page)*

- 18 -

An action for *mesne* profits is "[a] lawsuit seeking damages suffered by a landowner who has succeeded in a common-law action of ejectment whereby the plaintiff may recover for both the use of the land during the wrongful occupation and the costs of ejectment."  ACTION FOR *MESNE* PROFITS, Black's Law Dictionary (12th ed. 2024).  Here, in awarding damages to Ms. Boisson, the trial court explained:

> The challenge is at what point the damages [began] to accrue and at what amount.  The evidence established that in June of 2022, [Ms. Boisson] offered to rent the real estate to [Appellant] for … $495.00 … per month.  No credible evidence was presented that this was not a fair rental [value].  Therefore, the [c]ourt is awarding *mesne* profits for a period of … 30 … months from June 22, 2022[,] through the date of this Decision and Verdict for a total of … $14,850.00….

Decision & Verdict at 7 (italics added).

---

remedy granted in civil cases is [JNOV].").  "[T]o preserve the right to request a JNOV post-trial, a litigant must first request a binding charge to the jury or move for a directed verdict or a compulsory non-suit at trial." **Jones v. Foods on First III, Inc.**, 345 A.3d 231, 246-47 (Pa. Super. 2025) (cleaned up); **see also Rogers v. Thomas**, 291 A.3d 865, 882-83 (Pa. Super. 2023) (*en banc*) ("A motion for compulsory nonsuit allows a defendant to test the sufficiency of a plaintiff's evidence and is made at the close of the plaintiff's case.  A motion for directed verdict, like a motion seeking [JNOV], requires a court to test the sufficiency of all evidence at the close of a case.") (cleaned up); **Phelps v. Caperoon**, 190 A.3d 1230, 1247 (Pa. Super. 2018) ("A motion for a directed verdict is appropriate even in non-jury cases.").  Our review of the transcript shows Appellant failed to move for a compulsory non-suit or directed verdict at the non-jury trial.  Nevertheless, we decline to find waiver in this instance, as the trial court addressed this issue on the merits and Ms. Boisson has not argued for waiver.  **See Bank of America, N.A. v. Scott**, 271 A.3d 897, 902 n.4 (Pa. Super. 2022) (declining to find waiver where the trial court did not find waiver of the appellant's motion for JNOV and addressed the issue).

Appellant has not demonstrated the trial court's award is not supported by competent evidence. At trial, Ms. Boisson described the Property as a mobile home community, explaining residents rent from her. *See* N.T. at 8, 21. She testified to the following:

[Ms. Boisson's counsel:] So all of the lots that mobile homes are situated on on this [Property] are rented to the tenants?

[Ms. Boisson:] Yes.

[Ms. Boisson's counsel:] And can you tell me what lot rent these tenants pay? And if there's a range, give me the range.

[Ms. Boisson:] The … mobile homes that are owned by the tenants are renting the lot for [$]505 a month. The one home on Buttercup [not inhabited by Appellant], that's owned by me, they're renting the home and the lot for [$]1200 a month. And the one owned by me and rented by the person living in [the] Sunset[ lot], they're renting it for [$]1400 a month.

[Ms. Boisson's counsel:] And is that fair market rent as far as you know?

[Ms. Boisson:] As far as I know, yes.

[Ms. Boisson's counsel:] To the best of your knowledge, how long has [Appellant] lived at the [Property]?

[Ms. Boisson:] As far as I know, it's been quite some time, maybe, and I'm guessing, maybe 50 years.

[Ms. Boisson's counsel:] Does she pay rent?

[Ms. Boisson:] No, she does not.

N.T. at 9-10.

When asked at trial about the $495.00/month rent demanded by Ms. Boisson in her June 3, 2022 letter to Appellant, the following occurred:

[Ms. Boisson's counsel:] How did you come up with the [$]495 a month proposed amount?

[Ms. Boisson:] Well, that's what it had been for several years.

- 20 -

[Ms. Boisson's counsel:] It had been for who?

[Ms. Boisson:] It had been for the residents that were renting the lot.

[Ms. Boisson's counsel:] In your opinion, is that --

[Appellant's counsel:] Objection, Your Honor. Asking for an opinion of a lay witness. There's no foundation as to what the lay opinion might be.

[The court:] Response?

[Ms. Boisson's counsel:] I'll rephrase. I'll withdraw that question.

*Id.* at 20.

Upon review, with respect to the lot rent, we fail to see how the $495.00/month rent is speculative, where Ms. Boisson testified it is how much she charged other residents at the time for renting lots on the Property. Further, to the extent Appellant questions what portion of the taxes and utilities paid by Ms. Boisson are attributable to Appellant's lot, the trial court did not base its award on this value, instead considering the monthly rent Ms. Boisson could have collected for the land.[15] As such, Appellant's third issue is meritless.

In sum, no relief is due on Appellant's issues. Accordingly, we affirm the judgment. However, because the October 9, 2025 judgment identifies the Property by the incorrect property identification number, we direct the trial

---

[15] Although not raised by Appellant, it is unclear to us why the trial court mentioned in its analysis that damages started accruing on June 22, 2022, as we are unsure of that particular date's significance. *See* Decision & Verdict at 7. However, because the trial court ultimately awarded 30 months of rent, with the initial month constituting July 2022 and the last month constituting December 2024, this mention of June 22, 2022, had no impact on the award given to Ms. Boisson.

court to correct this typographical error by changing the property identification number to 24534512958377.  **See** footnote 6, ***supra***.

Judgment affirmed.  Trial court ordered to change property identification number in judgment to 24534512958377.  Jurisdiction relinquished.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/10/2026